IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02502-RM-NRN

WENDY LOVE, and
JAY HAMM,

Plaintiffs,

v.

OFFICER MATHEW GRASHORN,
SERGEANT PHILIP METZLER, and
CITY OF LOVELAND

Defendants.

---

# ORDER ON
# DEFENDANTS' MOTION TO STAY DISCOVERY (Dkt. #70)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

Currently before the Court is Defendants' Motion to Stay Discovery ("Motion to Stay") (Dkt. #70), referred by Judge Raymond P. Moore. (Dkt. #71.) The Court has carefully considered the motion, response (Dkt. #76) and reply (Dkt. #78). The Court heard oral argument from the parties on May 17, 2022. (*See* Dkt. #81.) Now, being fully informed and for the reasons set forth below, it is hereby **ORDERED** that the Motion to Stay is **DENIED**.

## BACKGROUND[1]

This action arises from an incident that occurred on June 29, 2019. Plaintiffs had pulled into the vacant parking lot of a commercial building to rest and make repairs on an ice box on their truck. Plaintiffs had their three dogs with them—Bubba (a 16 year-old Rhodesian Ridgeback), Max (a black lab mix), and Herkimer (a 14-month old Staffordshire terrier/boxer mix). Unbeknownst to Plaintiffs, the business owner saw them remotely through video surveillance and called the Loveland Police Department ("LPD") concerning what the apparent trespass to his property. Officer Grashorn arrived at the scene to investigate and exited his vehicle. As he did so, Bubba, who was lying on the ground near Plaintiffs' truck, rose and "began a friendly gallop towards Officer Grashorn to greet him." (Dkt. #31 at 10, ¶ 42.) Officer Grashorn immediately drew his firearm and aimed it Bubba, yelling at Plaintiffs to get control of Bubba. Plaintiffs did so, but the commotion piqued Herkimer's interest, and Herkimer exited the back of the truck. Plaintiffs allege that Herkimer "pranced" towards Bubba and Officer Grashorn. Herkimer's tail was wagging and he appeared curious and friendly—showing no signs of aggression. Plaintiffs were calling out for the dogs to return, and allege that Herkimer began to return, but Officer Grashorn fired at Herkimer twice, shooting him in his face and body. Herkimer ultimately died of his injuries. Plaintiffs allege that, even if Officer Grashorn was afraid of Herkimer, he could have returned to his vehicle, used a taser, baton, or pepper spray, or shot near Herkimer to scare him. Officer Grashorn initially refused to allow Plaintiffs to attend to Herkimer.

---

[1] The allegations referenced herein are taken from Plaintiffs Second Amended Complaint ("SAC"). (Dkt. #31.)

Sergeant Metzler arrived at the scene shortly afterward. Plaintiffs allege that Sergeant Metzler told Officer Grashorn "since [Hamm's] saying he's going to the press, we better scratch him a ticket for something." (Dkt. #31 at 16, ¶ 71.) He directed Officer Grashorn to cite Mr. Hamm for having a dangerous dog. Later, Sergeant Metzler told veterinary personnel that Herkimer was a vicious dog that should be euthanized. Plaintiffs allege this affected the care Herkimer received. Herkimer lived another four days before he was ultimately euthanized.

Based on these allegations, Plaintiffs' Second Amended Complaint ("SAC") asserts claims against Officer Grashorn for unlawful seizure in violation of state and federal law.[2] Plaintiffs also bring a *Monell* claim against the City of Loveland (the "City") for its allegedly unconstitutional policies, practices, and customs related to the training and supervision of LPD personnel concerning interactions with dogs, and for routinely utilizing Sergeant Metzler to conceal officer misconduct. Finally, Plaintiffs claim that Sergeant Metzler retaliated against Plaintiffs' exercise of their First Amendment rights when, after Plaintiffs stated that they intended to go public with the alleged misconduct, Sergeant Metzler falsely charged Plaintiffs with ownership of a vicious dog. Further, Sergeant Metzler instructed veterinary personnel that Herkimer was a vicious dog and they should not operate on him.

Officer Grashorn and the City have moved to dismiss all claims against them. (Dkt. #45.) In part, Officer Grashorn invokes qualified immunity. The City moves for dismissal on the ground that Plaintiffs have failed to plausibly allege a *Monell* claim.

---

[2] The SAC also includes allegations and a claim against former LPD Chief Robert Ticer, but he has since been voluntarily dismissed from the case. (*See* Dkt. ## 56 & 58.)

3

Sergeant Metzler has separately moved to dismiss the claim against him on the basis of qualified immunity. (Dkt. #70.)

Defendants seek to stay all discovery pending resolution of the motions to dismiss, which are fully briefed and will be decided by District Judge Moore. They argue that a stay is appropriate given the invocation of qualified immunity with respect to Officer Grashorn and Sergeant Metzler (together, the "Individual Defendants"). Defendants acknowledge that the City cannot assert qualified immunity, but argue that a stay is nevertheless appropriate with respect to the *Monell* claim against it because the Individual Defendants have raised qualified immunity.

## LEGAL STANDARDS

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. March 30, 2006) (unpublished). Federal Rule of Civil Procedure 26 does, however, provide that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). Moreover, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)). Thus,

4

depending on the circumstances, an order staying discovery would be an appropriate exercise of this Court's discretion. *Id.*

In this District, a stay of all discovery pending the determination of a motion to dismiss is generally disfavored. *Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009). Nevertheless, discovery may be inappropriate while threshold issues of immunity or jurisdiction are being resolved. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (explaining that on motion raising a qualified immunity defense, "the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time at the time an action occurred [. . . and u]ntil this threshold immunity question is resolved, discovery should not be allowed"). The Supreme Court has suggested that, in order to avoid unnecessary exposure to burdensome discovery, the preferred practice is for the official to move to dismiss the claim on the grounds of qualified immunity before discovery is ordered. *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998) ("if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery"); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) ("The defense by a public official based on a claim of qualified immunity, if successful, protects the official both from liability as well as from the ordinary burdens of litigation, including *far-ranging* discovery.") (emphasis added). Similarly, a stay may be appropriate if "resolution of a preliminary motion may dispose of the entire action." *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003); *see Vivid Techs., Inc. v. Am. Science & Engineering, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be

dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").

However, the defense of qualified immunity "is not a bar to all discovery." *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004) (noting that qualified immunity does not protect an official from *all* discovery, "but only from that which is "broad-reaching") (citing *Crawford-El*, 523 U.S. at 593 at n.14). There are circumstances when discovery is permissible despite an assertion of qualified immunity, including cases alleging official-capacity claims, requests for injunctive (as opposed to monetary) relief, and claims against entities, not individuals. *See Rome*, 225 F.R.D. at 643. Discovery may also be permissible when the doctrine is asserted based on contested factual assertions. *Id.* at 644; *see also Martin v. Cnty. of Santa Fe*, 626 Fed. Appx. 736, 740 (10th Cir. 2015) (explaining that "discovery generally should be avoided once qualified immunity is raised," unless the plaintiff demonstrates "how [such] discovery will raise a genuine fact issue as to the defendants' qualified immunity claim." (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1387 (10th Cir. 1994)).

In addition, "it is essential to recognize that because the defense of qualified immunity is limited to particular claims against particular individuals, the corresponding protection against burdensome discovery is also limited. The defense is available only to individual government officials, not governmental entities." *Estate of Saenz v. Bitterman*, No. 20-cv-00848-NRN, 2020 WL 6870565 at *2 (D. Colo., May 15, 2020) (denying stay of discovery where claims were made against government entity in addition to police officer who had invoked qualified immunity) (quoting *Rome*, 225 F.R.D. at 643).

When considering a stay of discovery, this Court has considered the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the Court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See String Cheese Incident*, 2006 WL 894955, at *2.

In addition, some courts have also adopted a "preliminary peek" approach in deciding whether to stay a case pending resolution of a dispositive motion. This involves considering the potential merits of the dispositive motion and assessing the likelihood the motion to dismiss will be granted. *See, e.g.*, *Tradebay, LLC v. eBay. Inc.*, 278 F.R.D. 597, 602–03 (D. Nev. 2011) (agreeing to the propriety of a preliminary peek at the merits of the motion to dismiss, but stating that a stay of all discovery should be ordered if the court is "convinced" that a plaintiff will be unable to state a claim for relief); *Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.,* Civ. No. S-07-0142 LKK GGH, 2007 WL 1146607 (E.D. Cal. 2007) (taking a "peek" at the motion to dismiss to assess whether the defendant has made a "clear and convincing showing," that it will prevail on the merits of the dispositive motion); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000) (stating the court should "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be *an immediate and clear possibility* that it will be granted." (citing *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (emphasis in original))); *Feldman*, 176 F.R.D. at 652–53 (explaining that while it is not necessary to decide the motion to dismiss to determine the motion to stay discovery, "it is necessary for the Court to 'take a preliminary peek' at the merits of the motion to dismiss to see if it appears to be clearly meritorious and truly

7

case dispositive"); *but see Estate of Thakuri by and through Thakuri v. City of Westminster*, No. 19-cv-02412-DDD-KLM, 2019 WL 6828306 (D. Colo., Dec. 12. 2019) (declining to take a "preliminary peek" at the merits of a dispositive motion on a motion to stay because to do so would "essentially require adjudication of the dispositive motion at the same time, thus negating the entire purpose of the motion to stay and inappropriately usurping the District Judge's authority to determine the merits of the Motion to Dismiss").

The "preliminary peek" factor has been used by this Court and numerous other courts in weighing whether to stay discovery. For example, in *Bacote v. Federal Bureau of Prisons*, No. 17-cv-03111-RM-NRN, 2019 WL 5964957, at *2 (D. Colo. Nov. 13, 2019), Judge Moore found it reasonable and not clearly erroneous when this Court took a "preliminary peek" at the merits of a dismissal motion in deciding whether to stay discovery. Judge Moore noted that there is no controlling authority which precludes such consideration. *Id.* at *2. In *Bacote*, Judge Moore had referred the motion to dismiss itself to this Court for recommendation, so the Court was fully entitled (indeed obligated) to assess the validity of the dismissal motion, on which a recommendation would be made.

In contrast to *Bacote,* the motions to dismiss in this matter have not been referred. Taking a "preliminary peek" and even superficially evaluating a pending dispositive motion could put the magistrate judge in an awkward position. *See Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *8 (E.D. Cal. Feb. 7, 2011) (recognizing the "awkward nature" of the preliminary peek review procedure and emphasizing that the magistrate judge deciding the motion to stay is *not* the judge who

8

will hear and resolve the defendant's motion to dismiss). Nevertheless, without infringing on Judge Moore's prerogative to ultimately decide the dismissal question, the Court believes it is appropriate and consistent with Rule 1, in deciding whether to stay discovery, to consider as one of the factors whether the dispositive motion is clearly and convincingly meritorious:

> The district judge will decide the dispositive motion and may have a different view of the merits of the underlying motion. Thus, this court's "preliminary peek" at the merits of the underlying motion is not intended to prejudge its outcome. Rather, this court's role is to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1. With Rule 1 as its prime directive, this court must decide whether it is more just to speed the parties along in discovery and other proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery and other proceedings to accomplish the inexpensive determination of the case.

*Tradebay*, 278 F.R.D. at 603.

## ANALYSIS

The Court has considered the invocation of qualified immunity and the *String Cheese* factors, and has taken a preliminary peek at the Defendants' motions to dismiss.

The Court finds that a balance of the above factors does not favor a stay in this matter. The Individual Defendants' mere assertion that they are entitled to qualified immunity does not end the analysis. The raising of qualified immunity militates in favor of a stay, but a stay is not automatic. Magistrate Judge Nina Y. Wang was confronted with this issue in *Estate of Ronquillo by & through Sanchez v. City & County of Denver*, No. 16-cv-01664-CMA-NYW, 2016 WL 10842586 (D. Colo. Nov. 14, 2016). In denying the defendants' motion to stay, Judge Wang reasoned as follows:

> The prevailing law provides that assertions of qualified immunity will often warrant a stay of discovery. It also recognizes, however, that in some circumstances discovery should proceed "to elicit facts pertinent to the defense." *Rome*, 225 F.R.D. at 643. *See also Currier v. Doran*, 242 F.3d 905, 914 (10th Cir. 2001) (although qualified immunity protects public officials "from the costs associated with defending against lawsuits, particularly baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before at least some discovery [is] conducted") (citing *Crawford-El*, 523 U.S. at 593-94, n.14); *Choate v. City of Gardner, Kansas*, No. 16-2118-JWL, 2016 WL 2958464, at *4 (D. Kan. May 23, 2016) (denying motion to dismiss excessive force claim finding, in part, that the court could not conclude as a matter of law from the video of the event at issue that the officers' use of deadly force was justified).

*Id.* at *4. The same factors considered by Judge Wang in *Ronquillo* likewise weigh against staying all discovery here. Contrary to Defendants' argument, discovery will proceed against the City, for whom the defense of qualified is not available. *Rome*, 225 F.R.D. at 644 (qualified immunity defense "is available only to individual government officials, not governmental entities"). It makes no sense to have the Individual Defendants be deposed as witnesses now, only to be re-deposed as parties later in the event their qualified immunity defenses are unsuccessful.

Furthermore, the *String Cheese* factors weigh in favor of proceeding with discovery. Plaintiffs have an undeniably strong interest in proceeding expeditiously with their case. "Like the government official who rightfully invokes the defense of qualified immunity, a private citizen is entitled to claim the timely protection of the law." *Sanchez v. Hartley*, No. 13-cv-01945-WJM-CBS, 2016 WL 7176718, at *7 (D. Colo. Apr. 26, 2016). This matter has already been pending for over 8 months. The wheels of justice turn slowly in any event, but issuing the requested stay would cause those wheels to nearly grind to a halt, further delaying the process of answering whether Defendants' actions in this case were consistent with the Constitution.

Of course, requiring Defendants to participate in discovery while a motion to dismiss remains pending is a burden. But here, the Individual Defendants would likely be deposed anyway as witnesses regarding Plaintiffs' municipal liability claims, so any additional burden associated with also being asked questions as to the individual liability claims would be minimal. *See Estate of Ronquillo,* 2016 WL 10842586, at *4 ("While this court understands that discovery may burden the Individual Defendants involved in this action and distract from their core professional responsibilities, such is always the case for witnesses in civil litigation."). In short, "Defendants have established no particularized facts that demonstrate they will suffer a clearly defined and serious harm associated with moving forward with discovery." *Id.*

As to the convenience of the Court, I find this factor does not favor a stay of discovery. Proceeding with discovery promotes the Court's interest in efficiently managing its docket. Having cases sit in limbo, without any progress, while a dispositive motion takes months (or potentially a year) to be decided, is not in the Court's interest. There are substantial difficulties associated with gearing up a lawsuit that has remained stagnant for many months.

The potential for discovery disputes or the need to resolve complex case management issues does not overcome the court's "strong interest in ensuring the speedy resolution of the cases before it." *Birse v. CenturyLink, Inc.*, No. 17-cv-02872-CMA-NYW, 2019 WL 161642, at *3 (D. Colo. Jan. 2, 2019); *see also Genscape, Inc. v. Live Power Intel. Co. NA, LLC*, No. 18-cv-02525-WYD-NYW, 2019 WL 78933, at *3 (D. Colo. Jan. 2, 2019) (finding that "the potential for discovery disputes does not outweigh the court's determination that it is most efficient to move forward without a stay").

Managing cases, resolving discovery disputes, and moving the cases toward trial is what federal magistrate judges do. "Discovery disputes are the bread and butter of a magistrate judge's involvement in many civil actions and will no doubt continue to be such," and the court "cannot find that having to afford such guidance is a valid reason to stay . . . discovery in a particular action." *Salls v. Secura Ins.*, No. 18-cv-00370-MSK-GPG, 2019 WL 1228068, at *2 (D. Colo. Mar. 16, 2019). To the contrary, having cases just sit on the docket without any progress, adding to the already disheartening average months-to-trial statistics, is not in the Court's interest and weighs strongly against a stay. At bottom, "cases that linger on the Court's docket are more difficult to manage," *Bitco Gen. Ins. Corp. v. Genex Constr. LLC*, No. 16-cv-01084-WJM-NYW, 2016 WL 8608452, at *1 (D. Colo. Sept. 13, 2016), and "[t]he Court has an interest in managing its docket by having the cases on its docket proceed expeditiously." *WildEarth Guardians v. IRG Bayaud, LLC*, No. 14-cv-01153-MSK-KLM, 2014 WL 4748296, at *7 (D. Colo. Sept. 24, 2014).

The interests of non-parties to this case is a neutral factor. Defendants note that there are non-party witnesses who may "potentially" be inconvenienced by discovery that may ultimately prove unnecessary if Defendants prevail on their motion. But vague, unspecified allegations of potential inconvenience do not tip the scales one way or the other. *See Genscape, Inc. v. Live Power Intel. Co. NA, LLC*, No. 18-cv-02525-WYD-NYW, 2019 WL 78933, at *3 (D. Colo. Jan. 2, 2019) ("[I]t is unclear to what extent the interests of nonparties will be impacted by discovery in this matter; thus, this factor neither favors nor counsels against a stay."); *Myers v. City of Loveland*, No. 12-cv-02317-REB-KLM, 2012 WL 5364219, at *2 (D. Colo. Oct. 31, 2012) ("[A]bsent any

specific nonparty interests that would be affected, the fourth factor neither weighs in favor of nor against granting a stay.").

As to the final *String Cheese Factor*, the Court finds that denying a stay promotes the public interest. The Court takes judicial notice of the fact this incident has received state-wide and even national attention. The public has a strong interest in understanding what occurred on June 29, 2021 and whether the shooting death of an allegedly friendly dog, who was showing no signs of aggression, was lawful, and whether the LPD issued a citation in retaliation for Plaintiffs' stated intention to go to the media about the incident. The allegations leveled against the LPD and the City are serious. It may be that Defendants' conduct will pass constitutional muster, in which case the public is better served by knowing that hard reality, as fairly determined by the judicial process, sooner rather than later. *See A.A. v. Martinez*, 2012 WL 2872045, at *14 (D. Colo. July 12, 2012) ("[T]he public interest is well-served by prompt and efficient handling of litigation, particularly where the litigation involves allegations against public officials.").

Finally, on the issue of the preliminary peek, the Court has reviewed the motions to dismiss and related briefing. The motions to dismiss are coherent and make nonfrivolous arguments that Individual Defendants are entitled to qualified immunity based on the circumstances of the offense and allegedly indisputable reasonable conduct of the officer. But the same may be said of Plaintiffs' oppositions to the motions to dismiss, which argue that Plaintiffs plausibly have alleged violations of clearly established rights under the First and Fourth Amendment.

In taking the preliminary peek at the motions and opposition, two things stand out with respect to Officer Grashorn's motion. First, Plaintiff argues it is clearly established law in the Tenth Circuit that the killing of an unaggressive pet dog by law enforcement can be an unconstitutional Fourth Amendment seizure. *See Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2021) (explaining that it is unlawful to seize a dog absent a warrant or circumstances justifying an exception to the warrant requirement). Defendants do not dispute this proposition.

The second point is that the issue of whether, in this case, Officer Gashorn acted as would a reasonable police officer under the circumstances seems to be an issue that requires some factual development. The allegations in the SAC are that a friendly tail-wagging puppy, playfully approaching the officer with curiosity. The dog is then shot by the officer.

On reviewing the motions to dismiss, this appears to be a case very similar to *Estate of Ronquillo*, 2016 WL 10842568, decided by Judge Wang. That was an excessive force case against police officers. Defendants moved to dismiss based on qualified immunity and moved to stay discovery. Judge Wang explained that claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment:

> This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396). The reasonableness inquiry in excessive force cases "overlaps with the qualified immunity question, which also requires the application of a reasonableness standard in order to determine whether an officer violated a clearly established right." Id. (citing *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995); *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991)). The Tenth Circuit has

> suggested that the interplay of the two standards "renders a qualified immunity defense of less value when raised in defense of an excessive force claim." *Id.* Nonetheless, the Tenth Circuit has also instructed that the question of whether the officers acted reasonably is a legal determination in the absence of disputed material facts, and while the reasonableness standard "is inevitably fact dependent, it should not be reserved for the jury in the absence of disputed material facts." *Id.* (citing *Wilson*, 52 F.3d at 1553).

*Id.* at *2. Because of the factual issues surrounding the circumstances of the incident in the *Estate of Ronquillo* case, including specifically the need for an assessment of the reasonableness of the officer's conduct, Judge Wang denied the motion to stay. *Id.* at *4. *See also Estate of McClain v. City of Aurora*, 20-cv-02389-DDD-NRN, 2021 WL 307505, at *2–3 (D. Colo Jan. 29, 2021) (denying motion to stay discovery in face of claims of qualified immunity by individual police officers and paramedics in excessive force case resulting in death where *Monell* claims were also brought against the municapaility as well and citing *Ronquillo*); *Choate v. City of Gardner, Kansas,* No. 16-2118-JWL, 2016 WL 2958464, at *4 (D. Kan. May 23, 2016) (denying motion to dismiss excessive force claim finding, in part, that the court could not conclude as a matter of law from the video of the event at issue that the officers' use of deadly force was justified).

In this case, notwithstanding the assertion of a qualified immunity defense, because the reasonableness of an officer's conduct under the circumstances is at issue and the facts surrounding those circumstances are subject to different interpretations, factual development may be important to the ultimate determination of the motions. As Judge Wang said in *Estate of Ronquillo,* "It is not proper for this court to make factual findings in the context of these Motions to Stay. In light of the pending Motions to Dismiss that remain before [the District Judge], the inquiry into the totality of the

15

circumstances required by the court, and the potential for disputed material facts surrounding the qualified immunity defense as evidenced by the Parties' briefing, this court finds that a stay of all discovery is not appropriate." *Id.* at *4.

Undeveloped factual issues also weigh against granting a stay with respect to Sergeant Metzler's motion to dismiss. For example, Sergeant Metzler argues that Plaintiffs have failed to state a First Amendment retaliation claim because they have not plausibly alleged that that their comment about contacting the media was the but-for cause of the alleged retaliation. In his motion to dismiss, Sergeant Metzler analogizes the situation to a plaintiff who brings a claim for a retaliatory arrest, and explains that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause or the arrest." (Dkt. #43 at 4–5 (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019)) (internal quotations omitted).) Sergeant Metzler argues that there was probable cause to issue a citation for a dangerous dog given that Herkimer "charged" Officer Grashorn at a "full gallop." Notably, Sergeant Metzler's characterization of Herkimer's approach to Officer Grashorn is not consistent with the allegations of the SAC.

Plaintiffs respond that demonstrating a lack of probable cause is not required in this circumstance, particularly given that responding to the shooting after the fact was not a "dangerous task" task that required "quick decisions" in "circumstances that are tense, uncertain, and rapidly evolving," like the arrest context contemplated in *Nieves.* 139 S. Ct. at 1725. Further, Plaintiffs argue that even if probable cause were required, nothing alleged in the SAC supports a finding that the officers had probable cause to issue the dangerous dog citation. According to Plaintiffs, Sergeant Metzler's retaliatory

16

intent can be inferred from his statement that "since he's[3] saying he's going to the press, we better scratch him a ticket for something" (Dkt. #31 at 16, ¶ 71), and his other conduct related to this incident and others.

The Court does not reach the ultimate merits of these arguments—that is Judge Moore's prerogative. However, the Court does find that the preliminary peek factor does not weigh in favor of a stay. The purpose of qualified immunity is to protect government officials from "insubstantial claims claims without resort to trial." *Harlow*, 457 U.S. 800 at 813. The Court's brief review of the motions to dismiss does not suggest that these are insubstantial claims nor that there is an "immediate and clear possibility" that the motions will be granted. Put another way, the Court is not convinced that the Plaintiffs will be unable to state a viable claim for relief. To promote a just and speed resolution of this case, as directed by Rule 1, this Court declines to enter a stay.

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that Defendants' Motion to Stay Discovery (Dkt. **#70) is DENIED.** To the extent that Defendants have a particularized concern regarding burden from a specific discovery request, this Court will address such arguments at that time.

The Parties should promptly contact chambers to set a date for a scheduling conference.

BY THE COURT

Date: May 24, 2022  
Denver, Colorado

_____  
N. Reid Neureiter  
United States Magistrate Judge

---

[3] The Court understands "he" and "him" in this quote to refer to Mr. Hamm.