IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 21-cv-02502-RM-NRN

WENDY LOVE, and
JAY HAMM,

    Plaintiffs,

v.

MATHEW GRASHORN,
PHILIP METZLER, and
CITY OF LOVELAND,

    Defendants.

---

# ORDER

---

This lawsuit brought under Colo. Rev. Stat. § 13-21-131 and 42 U.S.C. § 1983 is before the Court on Defendants' Motions to Dismiss (ECF Nos. 43, 45), which have been fully briefed (ECF Nos. 60, 61, 63, 65). For the reasons below, Defendant Metzler's Motion is granted, and the other Defendants' Motion is granted in part and denied in part.

**I.    LEGAL STANDARDS**

    **A.    Dismissal under Fed. R. Civ. P. 12(b)(6)**

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). To defeat a motion to dismiss, the complaint must allege a

"plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

### B. Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018); *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Id.* (quotation omitted).

### C. Municipal Liability

To state a claim for municipal liability, a plaintiff must demonstrate the existence of a municipal policy or custom, a direct causal link between the policy or custom and the injury alleged, and deliberate indifference by the municipality. *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2019). "The deliberate indifference standard may be satisfied

when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

## II.     BACKGROUND

In their Second Amended Complaint, Plaintiffs allege Defendant Grashorn, a police officer with the Loveland Police Department employed by Defendant City of Loveland, fatally shot their fourteen-month-old dog, Herkimer, in 2019.[1]  (ECF No. 31, ¶¶ 17, 48.)  Plaintiffs had parked their truck in a vacant parking lot near a commercial building where they let their three dogs out, one at a time, to stretch, drink some water, and play.  (*Id.* at ¶¶ 24, 25, 26.)  One dog was then tied to a tree, another was lying down on the pavement, and Herkimer had returned to the truck.  (*Id.*)  Meanwhile, the owner of the building remotely observed Plaintiffs via the building's surveillance system.  (*Id.* at ¶ 27.)  He called the Loveland police and asked them to investigate Plaintiffs' presence.  (*Id.* at ¶¶ 27, 28.)  Two officers were dispatched to the location; Defendant Grashorn arrived first.  (*Id.* at ¶¶ 38, 39.)

After Defendant Grashorn exited his vehicle, the dog lying on the pavement got up and headed towards him.  (*Id.* at ¶ 42.)  Defendant Grashorn pulled out his gun, pointed it at the dog, and yelled at Plaintiffs to call off their dog.  (*Id.* at ¶ 43.)  Plaintiffs, who had not seen Defendant Grashorn arrive and were startled by his presence, called the dog, and it turned back towards them.  (*Id.* at ¶¶ 40, 44, 46.)  As this was happening, Herkimer jumped out of the truck and

---

[1] According to the Complaint, Herkimer was a "Staffordshire terrier/boxer mix" and "not a Pitbull."  (ECF No. 31, ¶¶ 17, 19.)  However, as another Court in this District has noted, "[a]n American Staffordshire Terrier is commonly referred to as a pit bull."  *Branson v. Price*, No. 13-cv-03090-REB-NYW, 2015 WL 5562174, at *3 (D. Colo. Sept. 21, 2015) (unpublished).

3

headed towards Defendant Grashorn.  (*Id.* at ¶¶ 44, 46.)  Shortly thereafter, Defendant Grashorn shot Herkimer twice—once in the face and a second time in the body—even though, according to the Complaint, he "had displayed no signs of aggression."  (*Id.* at ¶¶ 48, 52.)

Plaintiff Love begged Defendant Grashorn for permission to go comfort Herkimer and to take him to a vet, but he would not allow her to.  As other police officers arrived at the scene, they refused to allow Plaintiff Love to take Herkimer to the vet until Defendant Metzler, a police sargeant, arrived, about eight minutes after the shooting.  (*Id.* at ¶¶ 65, 67, 70.)  Officers then followed Plaintiffs to the vet and allegedly told the treating veterinarians that "Herkimer was dangerous and had attacked police and needed to be euthanized."  (*Id.* at ¶ 72.)  After Plaintiffs mentioned sharing what had happened with the media, Plaintiff Hamm was issued, at Defendant Metzler's direction, a summons for unlawful ownership of a dangerous dog.  (*Id.* at ¶ 71, 75.)  The district attorney's office later dismissed the charge.  (*Id.* at ¶¶ 74, 114.)  Herkimer was euthanized four days later.  (*Id.* at ¶ 77.)

Plaintiffs filed this lawsuit in state court in August 2021, and it was removed to this Court the following month.  They assert unlawful seizure claims under Colorado and federal law against Defendant Grashorn, a municipal liability claim against Defendant City of Loveland, and a retaliation claim against Defendant Metzler.

### III.    ANALYSIS

#### A.    Other Defendants' Motion to Dismiss

##### 1.    <u>Section 13-21-131 claim against Defendant Grashorn</u>

Plaintiffs' state seizure claim is premised on § 13-21-131, which provides a monetary damages remedy for persons deprived of their individual rights by a peace officer.  "A civil action pursuant to this section must be commenced within two years after the cause of action

4

accrues." Colo. Rev. Stat. § 13-21-131(5). Because the statute was not enacted until 2020 and does not apply retroactively, Defendant Grashorn contends Plaintiffs' claim must be dismissed with prejudice. Plaintiffs contend the statute is permissibly retroactive because it effects a change in remedy that is merely procedural or remedial. Plaintiffs also state that this is a novel issue of state law currently being litigated in other courts and that because their § 13-21-131 claim "mirrors" their § 1983 claim, dismissal of their claim would not fundamentally impact or alter the trajectory of this case. Because neither side has presented clear and binding precedent on this novel issue and dismissal is not likely to change how discovery is conducted in this case, the Court declines to dismiss the § 13-21-131 claim at this juncture.

2.  Section 1983 claim against Defendant Grashorn

Plaintiffs' federal seizure claim is premised on § 1983 and the Fourth Amendment. Defendant Grashorn contends he is entitled to qualified immunity because he acted reasonably under the circumstances. Because the Complaint states a plausible violation of Plaintiffs' Fourth Amendment rights and it was clearly established that pet dogs are subject to Fourth Amendment protection at the time of the shooting, the Court disagrees.

In their Motion, these Defendants request that the Court take judicial notice of the video of the incident. Courts generally limit review of a motion to dismiss to the four corners of the pleadings because the purpose of such a motion is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). However, a court may consider documents outside the complaint if they are central to the plaintiff's claim and referred to in the complaint and the parties do not dispute their authenticity. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). Or a court may consider such documents to show their contents but

not to prove the truth of matters asserted in them. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). But here, Defendants did not bother to submit the video to the Court, and the video is not available anymore via the link to Plaintiffs' website they cite in their brief. (*See* ECF No. 45 at 12 n.3.) Accordingly, the Court declines to consider the video in ruling on the Motions.

The Complaint alleges that Herkimer displayed no signs of aggression at the time of the shooting. (ECF No. 31, ¶ 52.) Although the Court need not accept the legal conclusion that "Herkimer did not pose an objectively legitimate or imminent danger to anyone, anywhere" (*id.* at ¶ 48), the Court finds Plaintiffs have alleged facts that if true could support a finding that Defendant Grashorn unconstitutionally seized Plaintiffs' dog. *See Mayfield v. Bethards*, 826 F.3d 1252, 1258 (10th Cir. 2016) (affirming district court's denial of motion to dismiss due to qualified immunity in the face of similar allegations that the dog was not acting aggressively toward two officers when one of them shot and killed it).

Moreover, the Court finds it would be clear to a reasonable officer that "killing a pet dog is a Fourth Amendment seizure" and would violate the Fourth Amendment, "absent a warrant particularly describing the things to be seized or circumstances justifying an exception to the warrant requirement." *Id.* at 1259 (quotation and citation omitted). Whatever lawful justifications may exist for the seizure in this case, the Court finds the circumstances alleged in the Complaint do not establish an exception to the warrant requirement as a matter of law. And regardless of whether Defendant Grashorn believed Herkimer posed an imminent threat justifying the use of deadly force, the allegations do not establish that the shooting the dog was reasonable. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer."

6

*Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006). Because it is not beyond doubt that Plaintiffs can prove no set of facts in support of this claim, Defendant Grashorn is not entitled to qualified immunity at this stage of the case.

        3.    <u>Municipal liability claim against Defendant City of Loveland</u>

Since the Court has already determined that Plaintiffs have sufficiently pleaded a constitutional violation by Defendant Grashorn, the viability of their municipal liability turns on whether they have alleged facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference by Defendant City of Loveland. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020). To meet the first requirement, Plaintiffs argue they have alleged both an informal custom that amounts to a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law and failure to train and supervise resulting from the municipality's deliberate indifference to the injuries that may be caused. (ECF No. 60 at 24.)

        a.    *Informal custom*

Plaintiffs allege that Defendant City of Loveland has an informal or unofficial custom, policy, or practice of "aggressive business protectionism" that "encourage[s] the prioritization of business interests over the safety and well-being of individual citizens (particularly those who appear to be poor)." (ECF No. 31, ¶¶ 29, 32.) They allege that when a business makes even a minor complaint, Loveland police officers "respond by rushing to the business and immediately using physical force on the people involved without ever even interviewing or investigating the [veracity] or severity of the original complaint." (*Id.* at ¶ 31.) As evidence of such a policy, Plaintiffs cite three incidents where Loveland police allegedly used excessive force against vulnerable individuals that occurred after Herkimer was shot. (*Id.* at ¶ 32.) They also assert that

7

the police chief and a city council member have made statements along the lines that Loveland police respond when they receive calls from the business community. (*Id.* at ¶¶ 29, 30.)

The Court finds these allegations are insufficient to establish the existence of "a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotations omitted). "With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct . . . or use other evidence, such as a police officers' statements attesting to the policy's existence." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015). Whatever parallels can be drawn between the shooting of Plaintiffs' dog and the alleged instances of excessive force against individuals, Plaintiffs have not shown that the former is part of a pattern of *similar* instances of misconduct. Nor do generic "tough on crime" statements, to the extent Plaintiffs have provided any specific statements, establish the existence of an informal policy to violate people's Fourth Amendment rights. These allegations also fail to establish deliberate indifference by Defendant City of Loveland.

b.     *Failure to train and supervise*

Plaintiffs' conclusory allegations that Defendant City of Loveland failed to properly train and supervise its employees with respect to uses of force and people's pet dogs is also insufficient to state a claim for municipal liability. Even if this Defendant were shown to be deficient in its training and supervising Defendant Grashorn, it cannot be held liable unless its policymakers can reasonably be said to have been deliberately indifferent to the need for further training and supervision. *See Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010). "The deliberate indifference standard may be satisfied when the municipality has actual or

constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* (quotation omitted). Plaintiffs have presented no evidence that this Defendant received any complaints about Defendant Grashorn or the police department's handling of people's pet dogs prior to Herkimer being shot. Nor have they shown that it was highly predictable or patently obvious that an incident such as this would occur. "A municipality's culpability for a deprivation of rights is at its most tenuous were a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Again, Plaintiffs have not adduced evidence of a pattern of similar constitutional violations by untrained officers that would have put this Defendant on notice that further training was required. Nor have they alleged facts regarding specific deficiencies as to how Defendant Grashorn or any other officer was supervised.

Accordingly, Defendant City of Loveland is entitled to dismissal of Plaintiffs' municipal liability claim.

### B. Defendant Metzler's Motion to Dismiss

Plaintiffs' retaliation claim against Defendant Metzler is premised mainly on him "directing his subordinates to falsely charge Plaintiff Mr. Hamm with ownership of a vicious dog in retaliation for Plaintiffs' saying they were going to tell the media what [the Loveland Police Department] had done to their dog." (ECF No. 31, ¶ 159.) They also allege that Defendant Metzler lied to the treating veterinarians and the community (via police reports and press releases) about Herkimer being a dangerous dog. (*Id.* at ¶¶ 160, 164.) Defendant Metzler asserts a qualified immunity defense.

To state a First Amendment retaliation claim, Plaintiffs must allege that (1) they engaged in a constitutionally protected activity, (2) Defendant Metzler's action caused them to suffer an

9

injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) his action was substantially motivated as a response to their exercise of their First Amendment rights. *See A.M. v. Holmes*, 830 F.3d 1123, 1162 (10th Cir. 2016). In *Hartman v. Moore*, 547 U.S. 250, 252 (2006), the United States Supreme Court adopted the requirement that plaintiffs asserting retaliatory prosecution claims must allege and prove an absence of probable cause for the underlying criminal charge. And in *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019), the Supreme Court adopted the same requirement for retaliatory arrest claims.[2]

Citing *Hartman* and *Nieves*, Defendant Metzler argues that Plaintiffs' retaliation claim—to the extent it is based on the issuance of a summons to Plaintiff Hamm—necessarily fails because Plaintiffs failed to plead the absence of probable cause. The Court agrees.

Plaintiffs' attempt to distinguish *Nieves* on the grounds that the summons was not issued in the same "rapidly evolving" context of arrest is unavailing. (ECF No. 61 at 9.) "[E]stablishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Hartman*, 547 U.S. at 261. The rationale for the requirement that a plaintiff asserting a retaliatory prosecution claim make a threshold showing that the decision to press charges was objectively unreasonable is not dependent solely on the rapidly evolving circumstances that may be present during an arrest and is equally applicable here, where Plaintiffs' dog was seriously wounded and undergoing veterinary treatment. Thus, for this portion of Plaintiffs' claim to survive, they needed to allege the absence of probable cause. They failed to do so.

---

[2] *Nieves* also adopted a narrow qualification of the requirement in cases where similarly situated individuals not engaged in the same sort of protected speech are not arrested, *see* 139 S. Ct. at 1727, but it is not relevant in the context of this case.

Plaintiffs' contention that the Complaint does not plead facts supporting arguable or reasonably mistaken probable cause is also unavailing. (ECF No. 61 at 11.) The requirement is that the Complaint allege the *absence* of probable cause. Here, the Complaint alleges that Defendant Metzler stated he had seen the body camera footage and directed that Plaintiffs be given a ticket. (ECF No. 31, ¶ 65.) Although the Court accepts as true Plaintiffs' allegation that Herkimer "displayed no signs of aggression" for the purpose of considering whether the seizure was reasonable, that does not amount to a showing that Defendant Metzler could not have determined, based on the information given to him and viewing the footage, that probable cause existed to charge Plaintiffs with owning a dangerous dog. "Arguable probable cause exists where a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (quotation omitted).

Under Colo. Rev. Stat. § 18-9-204.5, a "[d]angerous dog" is defined as any dog that "[d]emonstrates tendencies that would cause a reasonable person to believe that the dog may inflict bodily or serious bodily injury upon or cause the death of any person or domestic animal." The allegations in the Complaint do not preclude a finding that Defendant Metzler could have reasonably believed that Plaintiffs' mid-sized dog was headed in Defendant Grashorn's direction at a high rate of speed, had not turned around (as it was first shot in the face), and was not going to turn around, and therefore it was a "dangerous dog." Accordingly, the Complaint does not allege the absence of probable cause for the summons, and Plaintiffs retaliation claim fails to the extent it is based on the issuance of the summons.

With respect to Plaintiffs' allegations concerning Defendant Metzler's other actions—communicating with the treating veterinarians and having some role in the issuance of press releases and police reports—Plaintiffs have not alleged facts showing that these actions were substantially motivated as a response to Plaintiffs' telling the officers they would report the incident to the media.  Moreover, generalized allegations against "Loveland Police" and "Defendant officers" (ECF No. 31, ¶¶ 73, 74) are insufficient to state a claim against Defendant Metzler.  In a § 1983 action involving multiple defendants, it is "particularly important" that the complaint "make clear exactly *who* is alleged to have done *what* to *whom*."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quotation omitted).  Therefore, Plaintiffs' fail to state a First Amendment retaliation claim against Defendant Metzler.

As an alternate theory of liability, Plaintiffs allege that Defendant Metzler's retaliatory actions violated their Fourteenth Amendment substantive due process rights.  However, the Court agrees with Defendant Metzler that other, more specific constitutional amendments provide an explicit textual source protection for Plaintiffs' retaliation claim, obviating the need to resort to the more generalized notion of substantive due process.  *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).  Moreover, "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quotation omitted).  The Court finds Plaintiffs have not alleged specific actions by Defendant Metzler that amount to shocking government conduct.

In the absence of allegations supporting a constitutional violation by Defendant Metzler, he is entitled to qualified immunity, and the claim against him must be dismissed.

y

## IV. CONCLUSION

Therefore, Defendant Metzler's Motion (ECF No. 43) is GRANTED and the other Defendants' Motion (ECF No. 45) is GRANTED IN PART and DENIED IN PART. The claims against Defendants Metzler and City of Loveland are DISMISSED from this case, and the case will proceed on the claims against Defendant Grashorn only.

DATED this 21st day of September, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

z