**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

*Civil Action No. 21-CV-02502-RM-NRN*

WENDY LOVE,
JAY HAMM,

    Plaintiffs,

v.

OFFICER MATHEW GRASHORN, in his individual capacity,

    Defendant.

**DEFENDANT GRASHORN'S FED. R. EVID. 702
MOTION TO EXCLUDE EXPERT TESTIMONY OF JAMES W. CROSBY**

Defendant Officer Mathew Grashorn ("Officer Grashorn"), by and through counsel of record, Jonathan M. Abramson, Esq. and Yulia Nikolaevskaya, Esq., of Kissinger & Fellman, P.C., hereby submits his Fed. R. Evid. 702 Motion to Exclude Expert Testimony of James W. Crosby ("Motion"), as follows:

**D.C.COLO.LCivR. 7.1(a) CERTIFICATION**

Yulia Nikolaevskaya, undersigned counsel for Officer Grashorn, contacted counsel for Plaintiffs, Sarah Schielke, via email on March 23, 2023. On March 24, 2023, Ms. Schielke responded by email and indicated Plaintiffs are opposed to the relief requested herein.

**INTRODUCTION**

Plaintiffs' actions arise out of an incident which occurred while they were trespassing on property which did not belong to them, and while two of their dogs were unleashed and running loose on that property. During the incident, Officer Grashorn fired his weapon and injured one of Plaintiffs' dogs, Herkimer. Plaintiffs subsequently euthanized Herkimer. Plaintiffs filed this action

1

alleging that Officer Grashorn violated their constitutional rights and unlawfully seized Herkimer. To support their allegations against Officer Grashorn, Plaintiffs retained James W. Crosby ("Mr. Crosby" or "Crosby"), as an expert witness. Mr. Crosby subsequently issued an expert opinion in this case. *See* Ex. A - Preliminary Expert Report (the "Crosby Report") dated October 31, 2022. According to the Crosby Report, Mr. Crosby is a court-recognized expert on dog behavior, dog aggression, and dog bite investigation. *See* Ex. A - Crosby Report at pp 1-3.[1] However, the Crosby Report contains various opinions that are inadmissible and should be excluded by this Court because those opinions 1) usurp the function of the jury in deciding the facts; 2) opine as to the credibility of Officer Grashorn's position and testimony; 3) state legal conclusions; and 4) are irrelevant to the claims and defenses in this case, including containing various irrelevant opinions on violation of policy, procedure and practice. Lastly, the report also alludes to opinions in an area which Mr. Crosby does not possess specialized knowledge. Officer Grashorn asks this Court to exclude those inadmissible opinions.

## STANDARD OF REVIEW

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] The Crosby Report does not contain page numbering. For the Court's convenience, undersigned counsel for Officer Grashorn has incorporated page numbering into the heading "Exhibit A" and cites to said page numbering throughout this Motion.

2

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). Expert testimony can be excluded on the grounds that the testimony "states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law." *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993). "Expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702." *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) (internal quotation marks omitted). Moreover, "a proposed expert's opinion that a witness is lying or telling the truth might be inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." *Id.* (internal quotation marks omitted); *see also United States v. Leach*, 749 F.2d 592, 600 (10th Cir. 1984) (resolving conflicts in the evidence and reaching ultimate conclusions of fact are both functions exclusively reserved to the trier of fact).

In addition to satisfying Rule 702 and *Daubert*, proffered expert testimony also must meet the requirements of Federal Rule of Evidence 403. This Rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion of the issues, misleading the jury, undue delay,

3

wasting time, or needlessly presenting cumulative evidence." *Gallegos v. City of Espanola*, 2014 U.S. Dist. LEXIS 203901, *9-10 (D.N.M., 2014), citing Fed. R. Evid. 403.

## ARGUMENT

**A. The Court Should Exclude Any Part of the Crosby Report Which Attempts to Reach Ultimate Conclusions of Fact and Usurps The Function of The Jury.**

"An expert cannot simply spout facts and dress them up as opinions." "*Burns v. Sherwin-Williams Co.*, 2022 U.S. Dist. LEXIS 168122, *52 (N.D. Ill. 2022). "An expert witness is not a fact witness, and an expert witness is not a mouthpiece for telling the jury facts by calling them 'opinions.'" *Id.*; *see also Estate of Strong v. Schlenker*, 2019 U.S. Dist. LEXIS 120742, *9 (D. Colo. 2019) ("[expert] is not a fact witness in the case, and Plaintiff may not use [expert] as a vehicle by which it will establish the *facts vel non*"); *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 U.S. Dist. LEXIS 74102, at *6 (N.D. Ill. 2017) ("The Court agrees with Plaintiff that many of [the expert's] proffered opinions merely parrot what Defendants have told him about disputed facts or offer opinions that state legal conclusions. . . . [A]n opinion witness cannot simply vouch for the testimony of a fact witness.").

This Court should exclude the below outlined sections of the Crosby Report because those sections do not contain an expert opinion but rather attempt to establish facts, disputed or undisputed.

- In "Summary of Events", Mr. Crosby stated that Plaintiffs "were acting in a peaceful and lawful manner, making needed repairs to a transport box on their truck" and that "[t]he property owner confirmed to Loveland Police Dispatch that Love and Hamm had not tampered with or disturbed his dumpster, or indeed committed any visible unlawful action." Mr. Crosby also stated that "[d]uring his actions during contact with Love and

4

Hamm, Grashorn shot and killed the 14-month-old mixed-breed puppy known as Herkimer that belonged to Love and Hamm." *See*, Ex. A at pp. 4-5.

- In "Information Considered and Pertinent Observations"[2] at Section (1)(a), Mr. Crosby stated that Plaintiffs "were not approaching the building, did not evidence any indication if committing a crime, and have made no attempt to conceal their presence." *See*, Ex. A at p. 5.

- In "Information Considered and Pertinent Observations" at Section (1)(e), Mr. Crosby stated that Officer Grashorn drew his sidearm and targeted Bubba and did "not attempt to secure or deploy any less-lethal means of deterrent" as stated by the Loveland Police Use of Force policy or the Colorado Dog Protection Act. *See*, Ex. A at p. 5.

- In "Information Considered and Pertinent Observations" at Section (1)(f), Mr. Crosby stated that Herkimer was "focused" on Bubba, not Officer Grashorn and that Herkimer approached Bubba with a bouncy, playful gait, wagging his tail, and presenting physical characteristics consistent with a positive and relaxed dog. *See*, Ex. A at p. 5.

- In "Information Considered and Pertinent Observations" at Section (1)(g), Mr. Crosby stated that "Owner diverts Bubba's attention to himself for recall" and that Herkimer with bouncy, relaxed gait, tail wagging and ears up, moves toward Grashorn. *See*, Ex. A at p. 5.

- In "Information Considered and Pertinent Observations" at Section (3), Mr. Crosby stated that "Love and Hamm opine that Herkimer's behavior was that of an affiliative nature, moving with a bouncy and excited manner consistent with an adolescent, sociable dog.

---

[2] Mr. Crosby stated that this section of his opinion was based on examining the BWC footage provided in discovery, reviewing the footage from Officer Grashorn and observing the facts outlined in this section.

Love and Hamm assert that Herkimer never barked, growled, or gave any audible indication of potential aggressive display or violent contact." *See*, Ex. A at p. 8.

- In "Information Considered and Pertinent Observations" at Section (5), Mr. Crosby stated that "[t]he bodycam videos do indicate that there was a substantial delay between Grashorn shooting Herkimer and allowing the plaintiffs to transport Herkimer to a Veterinary care." *See*, Ex. A at p. 8.

- In "Opinions" at Opinion 3, Mr. Crosby stated that "[t]he video shows Herkimer clearly wagging his tail side to side energetically" and that Herkimer was a curious and friendly dog, unlikely to cause injury. *See*, Ex. A at pp. 11-12.

- In "Opinions" at Opinion 4, Mr. Crosby stated that Officer "Grashorn never took any steps to disengage from Bubba and Herkimer, when they approached; never tried to use less-lethal force; and never tried to observe" after Officer Grashorn arrived at the location. *See*, Ex. A at p. 12.

- In "Opinions" at Opinion 5, Mr. Crosby stated that "Grashorn denies the plaintiffs the ability to take Herkimer for medical aid, saying "Ma'am, you are not going to be able to help him."" *See*, Ex. A at p. 12.

The outlined above excerpts of the Crosby Report, do not contain an opinion regarding any specialized knowledge Mr. Crosby may possess. Those excerpts clearly usurp the fact-finding mission of the jury because they attempt to establish facts of the case, and thus, they should be excluded by this Court.

**B. This Court Should Exclude Parts of the Crosby Report Addressing Credibility of Officer Grashorn's Position and Testimony.**

"It is the exclusive function of the jury to weigh the evidence and determine witness

credibility." *Erickson v. City of Lakewood*, 2021 U.S. Dist. LEXIS 185191, at *11 (D. Colo. 2021) (citing *United States v. Leach*, 749 F.2d 592, 600 (10th Cir. 1984) and *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981)). Accordingly, "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (quoting *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993)); *see also Al-Turki v. Robinson*, 2013 U.S. Dist. LEXIS 20802, 2013 WL 603109, at *5 (D. Colo. 2013) (excluding opinions about the defendant's state of mind because the expert was "without personal knowledge and [was] rendering an opinion which is outside the scope of his expertise"). Rule 702 does not allow an expert witness to speculate as to the intent or state of mind of the parties. *See Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 U.S. Dist. LEXIS 51465, 2020 WL 1452166, at *8 (D. Colo. 2020).

This Court should exclude the following opinions contained in the Crosby Report specifically addressing Officer Grashorn's credibility and position.

- In "Opinions" at Opinion 3, Mr. Crosby stated that "[t]hus, based on Grashorn's own statements, it was improper and incorrect for Grashorn to claim that he perceived Herkimer as "aggressive." Mr. Crosby continued, "[t]his was a deficient, reckless, and knowingly incorrect response by Grashorn to the presence of the dogs including Herkimer and contradicts Grashorn's own statements of how he should proceed when addressing a domestic dog." *See*, Ex. A at p. 11-12.

- In "Opinions" at Opinion 4, Mr. Crosby stated that "[i]n fact, despite his claims to the contrary at his deposition, Grashorn had no reasonable belief that the plaintiffs were about to or had committed any crime." Mr. Crosby continued, "Grashorn had no reason to believe

7

the plaintiffs had been previously trespassed from property. His insistence that he had a reasonable belief that the plaintiffs were engaged in some crime of sufficient severity that might justify his unwillingness to temporary withdraw, or to otherwise keep the plaintiffs under surveillance until they secured the dog(s), strains credulity and is supported by neither the facts nor any reasonable police police/practices". *See*, Ex. A at p. 12.

Mr. Crosby's "opinion" as to Officer Grashorn's position and testimony is outside the scope of Mr. Crosby's expertise. This Court should strike the above cited specific opinions and any other opinions in the Crosby Report addressing or touching upon credibility of Officer Grashorn or credibility of Officer Grashorn's position.

**C. The Court Should Exclude Portions of the Crosby Report Which Offer Legal Conclusions, Performs Legal Analysis And, Thus, Invades the Province of the Jury.**

"[E]xpert witnesses cannot offer legal opinions." *United States v. Motsenbocker*, 2011 U.S. Dist. LEXIS 26550, *9 (W.D. Okla. 2011). "In no instance can a witness be permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988). Nor can an expert offer an opinion which invades the province of the jury in its determination of an ultimate fact or element of the crimes charged. *See United States v. Garza*, 566 F.3d 1194, 1200-1201 (10th Cir. 2009). While expert opinion is not always excluded because it touches on an ultimate issue, an expert may not state a legal conclusion by applying the law to the facts of the case. Fed. R. Evid. 704(a); *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998). "[A]n expert witness's testimony may not usurp the jury's fact-finding function."); *see also McGill v. Corr. Healthcare Cos., Inc.*, 2014 U.S. Dist. LEXIS 162540, at *5 (D. Colo. 2014) (holding that witness opinions which speculate as to a person's intent are improper). An expert cannot classify an opinion that defendant acted "knowingly and willfully". *See McCullon v. Parry*, 2021 U.S. Dist. LEXIS

8

206621, *18 (D. Colo. 2021).

The Crosby Report contains multiple statements and opinions that this Court should exclude because they constitute legal opinions and speculations as to Officer Grashorn's actions. This Court should exclude the following below opinions:

- In "Opinions" at Opinion 1, Mr. Crosby stated that "Herkimer did not present as, or show any indications of, being an 'animal that represents a significant threat to public safety, [or] to the officer's safety.' However, even if Herkimer had presented as an actual threat, according to all accounts and as confirmed by his bodyworn video, Grashorn completely failed to consider or use any alternative methods of control of Herkimer prior to shooting to kill Herkimer." Mr. Crosby continued, "Grashorn went to lethal force immediately and deliberately ignored all non-lethal alternatives available." Mr. Crosby also stated that "Grashorn also had no authorization, as required under this policy, from Supervisor or from Herkimer's owner to use deadly force to destroy Herkimer." *See*, Ex. A at p. 10.

- In "Opinions" at Opinion 2, Mr. Crosby stated that "[a]s Grashorn approached the plaintiffs and their dogs, he made no effort at all to initiate or prepare for a less- or non-lethal encounter with either dog. This is a clear departure from best practices and from training that Grashorn allegedly received" from PoliceOne. Mr. Crosby stated that "Grashorn appears instead to have adopted an approach to dog encounters that was deliberately reactionary and harrowingly reliant on the use of lethal force." Mr. Crosby continued, "[t]he failure of Grashorn to even attempt to adhere to recommended, reasonable and responsible practices for contact with dogs was egregiously reckless and irresponsible, and led directly to the needless and cruel death of Herkimer." *See*, Ex. A at pp. 10-11.

9

- In "Opinions" at Opinion 3, Mr. Crosby stated that "Grashorn apparently had all of the information, training, and experience anyone could need to have avoided turning this into a fatal encounter for Herkimer and a devastating tragedy for his owners. But seems from what we see on Grashorn's video, his comments afterward on scene, and in his deposition testimony, however, that he just chose to ignore it." Mr. Crosby continued and stated that "[t]his was a deficient, reckless, and knowingly incorrect response by Grashorn to the presence of the dogs including Herkimer and contradicts Grashorn's own statements of how he should proceed when addressing a domestic dog." *See*, Ex. A at pp. 11-12.

- In "Opinions" at Opinion 4, Mr. Crosby stated that "Grashorn had no reasonable belief that the plaintiffs were about to or had committed any crime." *See*, Ex. A at p. 12.

- In "Opinions" at Opinion 6, Mr. Crosby stated that "[t]he immediate use of deadly force by Grashorn was needless. Grashorn should have, as a reasonable and well-trained officer, recognized prior to shooting that the lack of a credible threat rising to the level of use of deadly force was not acceptable or reasonable action. Grashorn did indeed have multiple less-lethal options for preventing contact with the dog, yet recklessly and needlessly escalated the incident to the immediate deployment of deadly force." *See*, Ex. A at p. 13.

- In "Opinions" at Opinion 8, Mr. Crosby stated that "Officer Grashorn deliberately firing the second shot at a dog that was no longer any threat to his safety was further unjustified and reckless. This action also directly contributed to the needless and cruel death of the dog Herkimer." *See*, Ex. A at p. 13.

- In "Opinions" at Opinion 9, Mr. Crosby stated that after the first shot was fired by Officer Grashorn, Herkimer was "no longer a credible threat." *See*, Ex. A at p. 13.

10

In *Zorich v. St. Louis Cty.*, 2018 U.S. Dist. LEXIS 141506, *6, 2018 WL 3995689 (E.D. Mo. 2018), a Court declined to permit Crosby, either through his report, deposition, or testimony at trial, to offer legal conclusions that touch upon an ultimate legal issue in the case. Each of the above-described opinions and statements constitutes impermissible legal analysis or legal conclusions. These opinions invade the province of the jury. Just as in *Zorich*, this Court should exclude any opinion by Crosby touching upon an ultimate legal issue in the case.

**D. This Court Should Exclude Parts of the Crosby Report Which Are Irrelevant to Any Claims or Defenses in This Case.**

In addition to analysis under Rule 702, an expert's proposed testimony must be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advance[ ] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (brackets in original).

Under Rule 702(a), an expert may testify in the form of an opinion or otherwise if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702(a). "Relevant expert testimony must 'logically advance a material aspect of the case' and be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *United States v. Garcia*, 635 F.3d 472 (10th Cir. 2011).

The below outlined opinions by Mr. Crosby should be excluded as irrelevant to the claims and defenses in this litigation because they fail to logistically advance any material aspect of this case.

- In "Information Considered and Pertinent Observations" at Section (3), Mr. Crosby stated

11

that "Love and Hamm opine that Herkimer's behavior was that of an affiliative nature, moving with a bouncy and excited manner consistent with an adolescent, sociable dog. Love and Hamm assert that Herkimer never barked, growled, or gave any audible indication of potential aggressive display or violent contact." *See*, Ex. A at p. 8. Under *Graham v. Connor*, 490 U.S. 386 (1989), Officer Grashorn's actions will be analyzed from the perspective of a reasonable officer. Officer Grashorn has never met Plaintiffs or Herkimer. Therefore, Plaintiffs' opinion about Herkimer's nature and behavior is irrelevant to the *Graham* analysis and must be excluded so as not to confuse the jury.

- Any opinion offered in "Information Considered and Pertinent Observations" at Sections (5) and (6) (*see*, Ex. A at pp. 8-9) and in "Opinions" at Opinions 5 and 7 (*see*, Ex. A at pp. 12-13). Every statement or opinion contained in the above enumerated sections pertain to Plaintiffs' unsupported allegation that Officer Grashorn did not allow or delayed Plaintiffs in transporting Herkimer to the veterinarian. This exclusion should also pertain to any opinion offered in "Opinions" at Opinion 9, pertaining to "Grashorn's invalid, unlicensed opinion clearly expressed to the plaintiffs that her dog was not deserving or in need of medical intervention." In addition, some of the opinions and statements pertain to descriptions of the various injuries sustained by Herkimer, but without an explanation how those descriptions are relevant to Mr. Crosby's opinion. Under any circumstances, these opinions are irrelevant to the claims and defenses in this case as Officer Grashorn never disputed that he shot Herkimer twice and that Herkimer was eventually treated by a veterinarian. Subsequent to the alleged shooting actions of Officer Grashorn, or specific injuries sustained by Herkimer (including an entry and exit wound) are irrelevant as to

whether or not Officer Grashorn acted reasonable under the circumstances presented to him. The opinions offered in the above enumerated sections of the Crosby Report would not help the jury in deciding whether or not Officer Grashorn unlawfully seized Herkimer.

- Entire opinion offered in "Opinions" at Opinion 9, regarding Loveland Police Department ("LPD") and whether LPD failed to address any alleged deficits during the internal review of the shooting and whether LPD has" recklessly and deliberately departed from the best practices and reasonable control of Officer Grashorn's use of force in this incident." *See*, Ex. A at pp. 13-14. This Court has previously granted the City of Loveland's Motion to Dismiss a municipal liability claim against it, and the alleged issues of LPD training or review process are irrelevant as to whether Officer Grashorn unconstitutionally seized Herkimer.

- Lastly, any and all opinions throughout the entire Crosby Report pertaining to use of force or deadly force or training as to the use of force or deadly force should also be excluded, as claims and defenses in this case do not include an excessive or deadly use of force allegation. *See* "Opinions" at Opinion 6, "use of deadly force was not acceptable or reasonable action" (Ex. A at p. 13.); *see also* the "Information Considered and Pertinent Observations" at Section (1)(e), "Grashorn does not attempt to secure or deploy any less-lethal means of deterrent as stated by the Loveland Police Use of Force policy or Colorado Dog Protection Act." (Ex. A at p. 5).

All of the above outlined opinions pertain to issues not related to an allegation of Unlawful Seizure or reasonableness of Officer Grashorn's action prior to Officer Grashorn discharging his firearm. Therefore, this Court should exclude any parts of the Crosby Report which are unrelated

13

to the ultimate issues and defenses in this case.

**E. This Court Should Exclude Parts of the Crosby Report Pertaining to Whether Officer Grashorn Violated Any Training, Policy, or Procedure.**

In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005), citing *Whren v. United States*, 517 U.S. 806, 815 (1996).

In *Erickson,* the District Court excluded as irrelevant the portions of expert witness reports regarding the defendant officers' compliance with the police department policies and procedures. *See Erickson,* 2021 U.S. Dist. LEXIS 185191 at *18. The District Court also excluded the proposed expert witness opinion on standard police practices and found that expert witness opinions on standard police practices and whether defendants complied with those practices irrelevant and inadmissible. *Id*., at *44. "[P]olice enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and from time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be turned upon trivialities." *Whren,* 517 U.S. at 815 (citations omitted). While expert testimony on police procedures may be relevant to claims of municipal liability in order to determine whether the municipality failed to train its officers with respect to the use of force, such testimony is irrelevant to use of excessive force claims. *See Erickson*, 2021 U.S. Dist. LEXIS 185191 at *45. Pursuant to reasoning in *Erickson*, this Court should exclude the following opinions:

- Any and all opinions offered in "Opinions" at Opinion 1, as to whether or not Officer Grashorn violated LPD's written policy regarding Use of Force when he shot Herkimer.

> The exclusion must also pertain to discussion of any factors that went into Mr. Crosby's opinion regarding policy violation. *See*, Ex. A at p. 10.

- Likewise, this Court should exclude any and all opinions offered in "Opinions" at Opinion 2, as to whether or not Officer Grashorn departed from "best practices and from the training" that he received (Ex. A at pp. 10-11); any and all opinions offered in "Opinions" at Opinion 3, as to whether or not Officer Grashorn allegedly did not follow LPD policy (Ex. A at pp. 11-12); and any and all opinions offered in "Opinions" at Opinion 6, pertaining to reasonable or well-trained officer or whether the use of deadly force was not acceptable or reasonable action (Ex. A at p. 13).

The above outlined opinions by Crosby regarding LPD's policy, procedures and training are irrelevant as to issues related to alleged constitutional violation of Unlawful Seizure and whether or not Officer Grashorn committed a constitutional violation. Therefore, this Court should exclude any and all parts of the Crosby Report touching upon issues of violations of policy, procedure and training.

**F. If in This Case, Mr. Crosby Plans on Offering Opinion on Use of Taser and Use of Taser in Interactions With Dogs During Law Enforcement Encounters, Such Opinion Should be Excluded as Mr. Crosby Does Not Possess Specialized Knowledge or Training as to Taser Use.**

In this case, the Crosby Report does not contain an explicit opinion that during this incident Officer Grashorn should have used a taser instead of the gun. *See* Ex. A, generally. However, even if the Crosby Report does not mention a Taser, the report makes several references to "multiple less-lethal options" and alleges that Officer Grashorn failed to consider the less-lethal options in this incident. *See* Opinions 1, 4 and 6 (Ex. A, pp. 10, 12 and 13, respectively). It is expected that Mr. Crosby may attempt to testify at trial that "less-lethal options" for law enforcement officer

15

include the use of taser.

If Mr. Crosby attempts to provide any testimony at trial regarding use of a taser in this case, such testimony should be excluded. Under Fed. R. Evid. 702(a), an expert witness should possess "specialized knowledge" to "help the trier of fact [] understand the evidence". However, Mr. Crosby was not certified in taser use. See Ex. B, Crosby Deposition Transcript ("Crosby Depo."), 69:25. Mr. Crosby has never been through an actual taser course. *Id.* at 70:2-3. Mr. Crosby never used a taser on a dog. *Id.* at 91:10-11. Mr. Crosby never deployed a taser personally. *Id.* at 91:13-14. Therefore, Mr. Crosby lacks specialized knowledge as to taser use in law enforcement and taser use on the dogs. Because Crosby does not possess any specialized knowledge regarding taser use, his testimony should be excluded. *See Zorich ,* 2018 U.S. Dist. LEXIS 141506, *6 (E.D. Mo. 2018) (the Court finding that specialized or technical knowledge that would aid the jury in understanding some case issues but excluding Crosby's testimony as it relates to the alleged municipal ordinance and/or housing code violations and the issuance and execution of the search warrant at Plaintiff's residence because Crosby did not possess specialized knowledge as to these issues). Just as the Court in *Zorich*, this Court should prohibit Mr. Crosby from offering any opinions relating to tasers and a taser being a less-lethal option in interactions with dogs as Mr. Crosby does not possess specialized knowledge related to taser use on dogs or taser use in law enforcement.

## CONCLUSION

The Court should prohibit Mr. Crosby, either through the Crosby Report or Mr. Crosby's deposition/trial testimony, from (i) testifying to case facts; (ii) offering his opinion as to the credibility of Officer Grashorn's testimony and/or position; (iii) offering legal conclusions that

16

touch upon the ultimate legal issues in this case; and (iv) opining on issues that are irrelevant to claims or defenses in this case, including issues of policy, training and procedure and to discuss issues pertaining to law enforcement taser use or taser use in interaction with dogs. This Court should grant Officer Grashorn's Fed. R. Evid. 702 Motion to Exclude Expert Testimony of James W. Crosby.

Dated this 2nd day of May, 2023.

KISSINGER & FELLMAN, P.C.
*/s/ Jonathan M. Abramson*
Jonathan Abramson, Esq.
Yulia Nikolaevskaya, Esq.
3773 Cherry Creek North Drive, Suite 900
Denver, CO 80209
(P) 303-320-6100 (E) jonathan@kandf.com
*Attorneys for Defendant Officer Grashorn*

# CERTIFICATE OF SERVICE

   I hereby certify that on the 2nd day of May 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Sarah Schielke, Esq. [sara@lifeandlibertylaw.com]
*ATTORNEY FOR PLAINTIFFS*

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the non-participant's name:

              *s/ Elizabeth Jackson*
              Elizabeth Jackson, Paralegal
              Kissinger & Fellman, P.C.