# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

Sarah Schielke
The Life & Liberty Law Office
1209 Cleveland Ave.
Loveland, CO 80537

31 October 2022

PRELIMINARY EXPERT REPORT RE:

**WENDY LOVE, JAY HAMM, Plaintiffs, v. OFFICER MATHEW GRASHORN, in his
individual capacity,
FORMER SERGEANT PHILIP METZLER, in his individual capacity,
CHIEF ROBERT TICER, in his individual capacity,
and CITY OF LOVELAND, a Colorado municipality.**

**NOTE: THIS REPORT IS PRELIMINARY. FURTHER DETAILED OPINIONS MAY
FOLLOW AS ADDITIONAL INFORMATION IS PRESENTED. EXPERT OPINIONS
ARE NOT LIMITED TO THE OPINIONS PRESENTED BELOW. I EXPLICITLY
RESERVE THE RIGHT TO AMEND, EXPAND, AMPLIFY OR CLARIFY THESE
OPINIONS IF MORE DATA IS PRESENTED AND AFTER FURTHER DETAILED
ANALYSIS.**

I have been retained by Sarah Schielke of The Life & Liberty Law Office to render expert opinion
in the case of Wendy Love and Jay Hamm v. Officer Grashorn, Sgt. Metzler and Chief Ticer of
the Loveland Police Department and the City of Loveland, Colorado, wherein Grashorn shot and
killed the pet dog belonging to plaintiffs Love and Hamm.

QUALIFICATIONS:

To summarize my qualifications regarding forming opinions about this case: I am a court-
recognized expert on dog behavior, dog aggression, and dog bite investigation in a variety of
municipalities, states, and in the United States District Court, based on my extensive experience
and training. I am a Certified Behavior Consultant-Canine-Knowledge Assessed. I have been
working with aggressive and dangerous dogs for over ten years. I actively provide training for
police departments and animal control agencies regarding dangerous dogs, dog aggression, use
of force in canine encounters and the investigation of serious and fatal dog attacks on human
victims. Agencies that I have instructed have included the Florida Animal Control Association,
the Alabama Animal Control Association, the National Animal Control Association, the Alberta
Animal Control and Bylaw Officers' Association, the London Metropolitan Police and their
Status Dog Unit, and other public and private conferences. I have directly investigated over 20
human fatalities by dogs with on-scene investigations, several of which have resulted in
successful criminal prosecution. When unable to respond personally I have consulted on

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

investigation of human fatalities in the United States, the United Kingdom, and India wherein I have rendered opinions. As a result of these investigations, I have performed hands-on direct behavioral evaluations of over forty (40) dogs that have killed human victims. My sworn reports and testimony have been accepted as expert materials in many states and in the Crown Court of the United Kingdom.

As to training received regarding animal behavior, I have attended many seminars and training sessions addressing canine behavior. These are listed in the attached CV and include, but are not limited to, advanced canine behavior training, obedience instructor training, dog behavior evaluation, Forensic Animal Behavior Analysis, Bite Prevention for Law Enforcement Officers, and course work taken through the University of Florida on Animal Crime Scenes/Clandestine Grave Investigation and Bite Mark Analysis.

I received my master's degree in Veterinary Forensics from the College of Veterinary Medicine, the University of Florida. In fulfillment of that degree, I completed coursework in Forensic Animal Behavior Analysis, Interpersonal Violence and Animal Abuse, Veterinary Forensic Pathology, Veterinary Forensic Osteology, Animal Law, Scientific and Legal Principles of Evidence, and Forensic Crime Scene Analysis. I have taught canine behavior and assessing behavior problems and aggression across the United States, England, Italy, Poland and Canada. I received my Masters Degree in Veterinary Medical Science, specializing in Veterinary Forensics, at the College of Veterinary Medicine, the University of Florida, Gainesville, Florida, am currently completing my Doctoral Degree from the same, and anticipate being awarded said degree in 2022.

I am a Certified Animal Control Officer in the State of Florida and I served as the Animal Control Division Manager for Bay County, Florida, from February 2008 to September 2010. During my tenure at Bay County Animal Control my duties included daily shelter management, assuring the safe handling and humane treatment of animals in the care of Bay County Animal Control, investigating complaints of animal neglect and cruelty, overseeing and assisting in animal rescue and capture, response to calls to assist police in animal related calls, and performing investigations and making findings of fact regarding the declaration of Dangerous Dogs under Florida Statute.

I have taught portions of the Florida Animal Control Association curriculum for the certification of Animal Control Officers' including perception of threat and use of legal force in animal cases. I was a member of the Board of Directors of the Florida Animal Control Association and, as such, was privy to the discussions regarding establishment of Standards regarding the curriculum. I continue to provide training to members of the Florida Animal Control Association and other agencies. I am a Charter Member of the International Veterinary Forensic Science Association.

I served as a Police Officer with the Jacksonville Sheriff's Office from 1977 to 1999, performing twenty-two years of active service. During that period of time, I served as a Patrolman, a Sergeant, and a Lieutenant. My duties as a Patrolman included patrol duties, emergency response, and investigations.

As a Sergeant, my duties involved day to day on-scene supervision of call response, major calls

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

and investigations, allegations of misconduct, critical incident response and accountability, and investigating complaints regarding use of force by my officers. Some of these investigations did result in administering or recommending disciplinary action against officers for violating Departmental guidelines and proper procedures for said use of force. I was also extensively trained in the use and regulations of less- and non-lethal force options, including various chemical deterrent materials. These included the use of MACE, CS and CN type tear gasses, and oleoresin capsicum spray, and foggers.

As a Lieutenant, my immediate span of control as a Watch Commander ranged up to four (4) Sergeants and forty (40) officers, plus officers in training, at any one time. I served on the Firearms Review Board for the Jacksonville Sheriff's Office, the designated Board that determined whether a discharge of firearms case was justified and reasonable under Florida Statute and Department guidelines. I have attached a CV to this report detailing my work experience.

As both a Sergeant and a Lieutenant I was trained and designated as a Field Training Officer Supervisor, and had day to day responsibility to oversee the training of new officers and new supervisors in Department procedures, job tasks, and supervisory issues including the use of force and investigating cases thereof.

LIST OF PUBLICATIONS AUTHORED BY JAMES W. CROSBY

Canine Aggression Blog-online at canineaggression.blogspot.com

Public Service announcements broadcast on WKGC Radio, Panama City, Florida, as part of a recurring program giving pet advice from 2008 through 2009.

Multiple interviews on television, radio and Internet platforms regarding dog behavior, aggression, and police use of force.

Chapters "Investigating Serious and Fatal Dog Attacks" and "Bite Mark Analysis and Interpretation" for the book Dog Aggression, edited by Mills and Westgarth, published by the University of Lincoln Press, Lincoln, Lincolnshire, England (2016).

"The Specific Use of Evidence in the Investigation of Dog Bite Related Human Fatalities", submitted in partial fulfillment of the Degree of Master of Science to the University of Florida.

"Law Enforcement Dog Encounters Training" curriculum and manual, produced for and approved by the US Department of Justice Community Policing Services division, and funded and endorsed by the National Sheriffs' Association.

Numerous expert presentations and trainings presented to the Association of Prosecuting Attorneys, the Georgia Institute for Continuing Legal Education, the Animal Behavior Society, various police departments and Sheriffs' Offices, and other professional Law Enforcement and

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

Animal Control associations.

MATERIALS EXAMINED:

Files labeled in Discovery package as follows:
        CITYDEFS00001-000018 (Offense Report).pdf
        CITYDEFS000019-000021 (Summons-Complaint).pdf
        CITYDEFS000022-000026 (CAD Incident Details).pdf
        CITYDEFS000027 through 000034, all bodycam footage files, identified as from
        Grashorn, Harris, Harris, Harris, Nye, Nye, Nye, Corrigan, 8 files in total, all in mp4
        computer format.
        CITYDEFS000035 (19-5397 Phone call 995 N Wilson Ave 062919 173907).wma
        CITYDEFS000036-000037 (Memo from Lt. Shaffer).pdf
        CITYDEFS000038-000047 (LPD Policy No. 11.04 w Grashorn signature).pdf
        CITYDEFS000048-000051 (LPD Policy No. 11-27 w Grashorn signature).pdf
        CITYDEFS000055-000057 (LPD Blue Team Chain Routings).pdf
        CITYDEFS000082-000142 (RFP 6 – Training-Dogs).pdf
        CITYDEFS002617-002665 (RFP – Press releases-SUPP).pdf
        Love – ECF 31 – Second Amended Complaint 11.23.21.pdf

Transcript, Deposition of Mathew Grashorn, October 6, 2022 re: Love and Hamm v. Grashorn et al.
A file labeled "Veterinary docs" containing:
        Herkimer Love 6.30.19
        Love-Hercamer_Medical history 2019-06-29 to 2019-06-30.pdf
        VCA documents.pdf

SUMMARY OF EVENTS:

According to allegations, reports, and other documentation produced by the Loveland Police Department and plaintiffs' counsel, on 29 June, 2019, Officer Grashorn was sent to investigate a call regarding Ms. Love and Mr. Hamm's presence in a vacant parking lot located at 995 N. Wilson Ave. in the City of Loveland Colorado. Love and Hamm were parked temporarily in the property parking lot at approximately 5:00 PM, during full daylight. At the time of Grashorn's contact with Love and Hamm, Love and Hamm were in possession of their three (3) dogs and were acting in a peaceful and lawful manner, making needed repairs to a transport box on their truck. There were no other persons, connected to the business or otherwise, at this location at the time of the shooting.

Grashorn was sent to the 995 N. Wilson Ave. by Loveland Police Dispatch based on a call from the property owner who was observing remotely. The property owner confirmed to Loveland Police Dispatch that Love and Hamm had not tampered with or disturbed his dumpster, or indeed committed any visible unlawful action. Loveland Police dispatch still sent Officer Grashorn to "investigate" Love and Hamm's presence in the empty parking lot during daytime hours.

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

During his actions during contact with Love and Hamm, Grashorn shot and killed the 14-month-old mixed-breed puppy known as Herkimer that belonged to Love and Hamm.

Plaintiffs' claim is that Grashorn used unlawful and needless deadly force against their voluntarily affiliative, non-violent, mixed-breed pup who, according to allegations, presented no threat of serious bodily injury or death to Grashorn.

INFORMATION CONSIDERED AND PERTINENT OBSERVATIONS:

1) I examined the bodycam footage provided by discovery. In viewing the footage from Officer Grashorn, I observed the following:

   a. Love and Hamm's truck was parked well away from the building on the property. Likewise, they were not approaching the building, did not evidence any indication of committing a crime, and have made no attempt to conceal their presence. On contact neither Love nor Hamm attempt to hide, flee, or evade contact with Grashorn.
   b. 00:10 The dog named Bubba (not shot by Grashorn) was visible laying on his side in the site parking area and rises to his feet.
   c. 00:11 The dog Bubba turns his head towards Grashorn and begins to move Grashorn's direction.
   d. 00:12 The dog Bubba looks toward his owner who is approaching from frame right.
   e. 00:13 At three seconds into the video Grashorn draws his sidearm and targets Bubba. Grashorn does not attempt to secure or deploy any less-lethal means of deterrent as stated by Loveland Police Use of Force policy or the Colorado Dog Protection Act. The policy of attempting to use less- or non-lethal force prior to the deployment of deadly force, as stated by Loveland Police Policy, is also recognized by the PoliceOne training provided (CITYDEFS000082 – 000142) and is considered industry standard procedure. (See also LEDET (2019) as approved by the US Department of Justice, Police & Dog Encounters (2013) produced by Chicago Safe Humane and approved by the US Department of Justice, Dog Bite Prevention for Law Enforcement (2014) produced by the Humane Society of Greater Rochester (NY) and Dog Encounters: Keeping Officers Safe (2015) as produced by the California Commission on Peace Officer Standards and Training for consistent, but not isolated, examples).
   f. 00:14 Herkimer, the dog that will be shot, approaches Bubba with a bouncy, playful gait, wagging his tail, and presenting physical characteristics consistent with a positive and relaxed dog. Herkimer is focused on Bubba, not Grashorn.
   g. 00:15 Owner diverts Bubba's attention to himself for recall and Bubba is turning toward the owner and away from Grashorn. Herkimer, with bouncy, relaxed gait, tail wagging and ears up, moves toward Grashorn.
   h. 00:16 Grashorn fires the first shot, striking Herkimer in the head. Impact can be seen just dorsal to the dog's left eye, just distal to the center of the orbit. Herkimer immediately drops to the ground and rolls to his side and then his back.

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *



i.   00:17 Grashorn fires at least one shot into Herkimer while Herkimer is down, incapacitated, and not a credible threat that required deadly, or any other kind, of force.



# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *



Second shell casing.

j.  01:31 Grashorn denies plaintiff the opportunity to take Herkimer to a Veterinarian for medical aid. Grashorn states instead "Ma'am, you are not going to be able to help him".

2)  In the state of Colorado, police training and conduct regarding domestic dogs is regulated and described by the Colorado Dog Protection Act. The narrative of the Colorado Dog Protection Act (excerpted) is as follows:

*Dog Protection Act. Each Department officer will receive a minimum of 3 hours of P.O.S.T. Certification training in the following areas:*
*The identification and meaning of common canine behaviors, and how to*
*differentiate between dogs who are exhibiting aggressive behavior that puts law enforcement officers or other persons in imminent danger and dogs that are exhibiting other behaviors (protective, friendly, excessive, barking, etc.); and*
*Alternatives to lethal force against dogs;3 and*
*What consists of a reasonable opportunity for a dog owner to control or remove the dog from the area.*
*The P.O.S.T. Certification training will provide Department officers an opportunity to effectively evaluate the totality of the circumstances and provide guidance on how to best manage a situation involving an interaction with a dog.*
*In consideration of the totality of circumstances then existing, Department officers should take into account their safety and the safety of other persons in the area, the availability of nonlethal equipment, the feasibility of permitting a dog owner to control the dog, the presence of an animal control officer, whether the call is a location that is listed in the dangerous dog registry (C.R.S. 35-42- 115), whether the location is one in which illegal narcotics are suspected to be manufactured or trafficked, or any other exigencies that may be present, such as when*

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

*Department officers are responding to a call that asserts or suggests that a person has been bitten by a dog or is in physical danger.*

*In consideration of the totality of the circumstances then existing, the Department emphasizes the use of alternatives to lethal force against dogs, when the circumstances allow, and utilization of LCHS animal control officers, when the circumstances allow, so Department officers can discharge their official duties.*

The bodycam video shows no deployment or attempted deployment of less- or non-lethal means of deterring the approach of either dog by Grashorn, despite allegedly receiving the PoliceOne dog encounter training. The PoliceOne training states the following (CITYDEFS000084):

> *To effectively handle encounters with dogs, officers should develop a proactive system for handling various types of contacts with dogs. Having a proactive system in place helps officers better prepare to manage the risks of a dog encounter as opposed to increasing the risk of a negative outcome by being in reactionary mode during the event.*

> *A quality proactive system for handling dog encounters should include the following six elements:*
> > *Having an understanding of dog-related laws and regulations*
> > *Having a plan to work effectively with animal control resources to handle dog-related matters*
> > *Helping to educate community members on responsible dog ownership*
> > *Understanding and recognizing various types of dog behavior*
> > *Having a variety of tactics and tools available that provide different response options during a dog encounter*
> > *Knowing what to do after a dog encounter*

3) Although Herkimer did exit Love and Hamm's truck without a leash as Grashorn approached, without verbal warning or notice, Love and Hamm opine that Herkimer's behavior was that of an affiliative nature, moving with a bouncy and excited manner consistent with an adolescent, sociable dog. Love and Hamm assert that Herkimer never barked, growled, or gave any audible indication of potential aggressive display or violent contact. Herkimer's display of 'friendly' behavior is supported by Grashorn's bodycam footage.

4) According to the bodycam video (Grashorn, 00:17) Grashorn shot Herkimer a second time while Herkimer was down on the ground, disabled from the first shot.

5) The bodycam videos do indicate that there was a substantial delay between Grashorn shooting Herkimer and allowing the plaintiffs to transport Herkimer to a Veterinary clinic for reasonable and normal Veterinary care after a serious injury.

6) According to the Medical Summary report from Colorado State University (submitted

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

6/30/2019 by Dr. Stephen Miller DVM), Herkimer sustained three (3) penetrating injuries consistent with gunshots. One injury was to the left lateral thorax, one to the left dorsal skull above the left eye, and one to the right lateral lumbar spine. One bullet was found still within the body, located on the left side at the level of the 3rd Intra-Costal Space (ICS). The bullet was extra-thoracic (outside the confines of the rib cage) and was behind the dorsal process of the 4th thoracic vertebra. The report (case number 361558) makes the following observations:

*"3 gunshot wounds located:*

*- GSW (1cm diam, clean margins, serosanguinous discharge) on left dorsolateral thorax near dorsal 7th ICS. Ioban on fur on lateral thorax but penetrating thoracic wound was originally found uncovered and open to air-and was immediately sealed with hand followed by ioban/elastikon. Suspect this is an entry wound and exit wound is along the right lateral thoracic spine. (Emphasis added)*

*- GSW on right lateral caudal thoracic spine, around dorsal paralumbar spinal muscles at T-L junction, mild serosanguinous discharge.*

*- GSW dorsal head above left eye, 1cm diam, clean margins, mild serosanguinous discharge. No exit wound located for this round."* (exhibit Barnes number P000129)(Emphasis added)

7) I reviewed Grashorn's deposition of 6 October 2022. There are numerous statements by Grashorn regarding the incident of note, including but not limited some of the following I've included herein.

For example, Grashorn was asked about his knowledge of dog behavior based on his personal experience and training, including but not limited to training received in his official capacity. When asked about the signs and indications of aggressive behavior vs. non-aggressive behavior in domestic dogs he answered the series of questions with these words (p. 71);

```
10        Q.   And how about if you were asked, "What are

11   signs, or what are behaviors -- what are indications of

12   a dog exhibiting aggressive behavior," what would you

13   list?
14        A.   Growling, showing teeth, hair on the back

15   raised, lunging at you.
16        Q.   And what are signs of friendly dogs?
17        A.   I was thinking about my dogs.  Their head's
```

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

```
18   down, their tail's wagging, it looks like they're
19   smiling.  Yeah.
20        Q.   What do you mean by that, "it looks like
21   they're smiling"?
22        A.   I don't know.  Like, their lips are raised,

23   but not in an aggressive manner.
```

OPINIONS:

1. Grashorn violated LPD's written policy regarding Use of Force when he shot Herkimer.

   The Loveland Police Policy and Procedure regarding the Use of Force states:

   > "An officer may use deadly force against an animal that represents a significant threat to public safety, to the officer's safety, or as a humanitarian measure if the animal is seriously injured and only after the owner of the animal has authorized the measure (to the extent practicable) and the officer's supervisor has approved the measure. Pursuant to the [sic] Colorado's **Dog Protection Act**, alternate types of control should be considered prior to the use of deadly force against a dog and, if feasible, allow the owner the opportunity to remove the dog from the immediate area."

   As a preliminary matter, and as discussed more below, Herkimer did not present as, or show any indications of, being an "animal that represents a significant threat to public safety, [or] to the officer's safety." However, even if Herkimer had presented as an actual threat, according to all accounts and as confirmed by his bodyworn video, Grashorn completely failed to consider or use any alternative method of control of Herkimer prior to shooting to kill Herkimer. He pulled out his firearm within a second of the dog Bubba beginning to stand up, while he was still close to his vehicle. Grashorn went to lethal force immediately and deliberately ignored all non-lethal alternatives available. His comments to the Plaintiffs after he had shot Herkimer seem to confirm his decision-making process. Grashorn also had no authorization, as required under this policy, from a Supervisor or from Herkimer's owner to use deadly force to destroy Herkimer. Additionally, neither Loveland Municipal Code nor Colorado State Statute would have authorized the destruction of any domestic dog for merely being at-large.

2. As Grashorn approached the plaintiffs and their dogs, he made no effort at all to initiate or prepare for a less- or non-lethal encounter with either dog. This is a clear departure from best practices <u>and</u> from the training that Grashorn allegedly received, to wit, the training from PoliceOne that states:

   > "To effectively handle encounters with dogs, officers should develop a

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

*proactive system for handling various types of contacts with dogs. Having a
proactive system in place helps officers better prepare to manage the risks of a
dog encounter as opposed to increasing the risk of a negative outcome by being
in reactionary mode during the event."*

It is clear from Grashorn's behavior in this encounter with Herkimer, as well as his
account given at his deposition of nearly shooting another dog in a fenced-in area shortly after
he had shot Herkimer, that Grashorn did not have a "proactive system for handling various
types of contacts with dogs." Grashorn appears instead to have adopted an approach to dog
encounters that was deliberately reactionary and harrowingly reliant on the use of lethal force.
The failure of Grashorn to even attempt to adhere to recommended, reasonable and responsible
practices for contacts with dogs was egregiously reckless and irresponsible, and led directly to
the needless and cruel death of Herkimer.

3. Grashorn reports in his deposition (p. 71) his knowledge of recognition of "aggressive"
behavior and posture in domestic dogs. He states clearly that he recognizes posture
including raised hackles, showing teeth and lunging as "aggressive". Yet during the
encounter with Herkimer, as shown in the bodycam video, Herkimer did not show those
postural cues: his hackles were not visibly raised, his teeth were not exposed, and he did
not lunge. Grashorn also stated he recognized a wagging tail as a sign of a "friendly" dog.
The video shows Herkimer clearly wagging his tail side to side energetically. Thus, based
on Grashorn's own statements, it was improper and incorrect for Grashorn to claim that he
perceived Herkimer as "aggressive." Grashorn should have clearly perceived Herkimer as
non-threatening, or at the very least as presenting minimal risk of injury. Certainly the dog
training he had apparently received would have informed such a basic and obvious
understanding and ought to have ensured that Grashorn was able to recognize that a dog
approaching as Herkimer did was a curious and friendly one, unlikely to cause any injury,
let alone a lethal injury that might justify the use of lethal force.

The video reveals this to have been a garden variety dog encounter which any reasonable
and reasonably trained law enforcement officer is expected to handle without gunfire. And
Grashorn apparently had all of the information, training, and experience anyone could need
to have avoided turning this into a fatal encounter for Herkimer and a devastating tragedy
for his owners. But seems from what we see on Grashorn's video, his comments afterward
on scene, and in his deposition testimony, however, that he just chose to ignore it.

Grashorn even admits on p.72 of his deposition that he should, according to LPD policy,
have considered multiple factors prior to deploying deadly force :

```
10   But do you agree with that, that you should

11   be taking this stuff into account?
12       A.   Yes.
13       Q.   All right.  And it also says that the
14   Department is emphasizing the use of alternatives to
```

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

```
15    lethal force against dogs, right?
16        A.    Yes.
17        Q.    Do you agree with that?
18        A.    Yes.
19        Q.    Does it seem like an important rule?
20        A.    Yes.
21        Q.    Why?
22        A.    Because lethal force should always be used

23    lastly.
```

Yet despite stating he recognized the need for an examination of the totality of circumstance and the requirements for making deadly force "…used lastly", Grashorn proceeded firstly and only in a manner of addressing the dogs, including Herkimer, with the deadly force option. This was a deficient, reckless, and knowingly incorrect response by Grashorn to the presence of the dogs including Herkimer and contradicts Grashorn's own statements of how he should proceed when addressing a domestic dog.

4. Grashorn admits that on the same day he shot Herkimer he confronted an openly "aggressive" dog and avoided using deadly force in that incident by simply stepping away from a gate

   p. 85: "**Q. And you're saying you avoided shooting it by stepping away from the gate?**

   **A. Yes.**"

   Yet Grashorn never took any steps to disengage from Bubba or Herkimer when they approached; never tried to use less-lethal force; and never tried simply observing Love and Hamm from a position of safety until his backup arrived or until Love and Hamm secured the initially visible Bubba or the emergent Herkimer. In fact, despite his claims to the contrary at his deposition, Grashorn had no reasonable belief that the plaintiffs were about to or had committed any crime. The lot appeared to be that of a business open to the public with no "no trespassing" signs visible. Grashorn had no reason to believe the plaintiffs had been previously trespassed from the property. His insistence that he had a reasonable belief that the plaintiffs were engaged in some crime of sufficient severity that might justify his unwillingness to temporarily withdraw, or to otherwise keep the plaintiffs under surveillance until they secured the dog(s), strains credulity and is supported by neither the facts nor any reasonable police policy/practices.

5. In his statement at video mark 01:31 (Grashorn bodycam video) Grashorn denies the plaintiffs the ability to take Herkimer for medical aid, saying "Ma'am, you are not going to be able to help him." Grashorn is not a Veterinary professional, Veterinarian, or other trained person in the field of animal health and welfare. By refusing the opportunity for care, Grashorn blatantly exceeded his authority, knowledge and training by making a Veterinary Medical decision that may have contributed to Herkimer's death. This statement and the accompanying actions also deprived the plaintiffs of their right to exercise control over their property, the dog Herkimer, for the purpose of proper and humane care and

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

comfort of the animal.

6. The immediate use of deadly force by Grashorn was needless. Grashorn should have, as a reasonable and well-trained officer, recognized prior to shooting that the lack of a credible threat rising to the level of use of deadly force was not acceptable or reasonable action. Grashorn did indeed have multiple less-lethal options for preventing contact with the dog, yet recklessly and needlessly escalated the incident to the immediate deployment of deadly force.

7. Based on my extensive experience and training in the analysis of wounds, the thoracic anatomy and skeletal composition of the domestic dog, and the extensive documentation of the veterinary reports, I can, to a scientific degree of certainty, reach the following conclusions regarding the defects identified as bullet wounds and the likely trajectory thereof:

   a. The defect noted above the left dorsal skull is consistent with the impact defect noted in my examination of the bodycam video. This was fired directly at the dog's skull. This wound is identified in this report as shot #1 based on location and the video record.
   b. The wound on the dog's left dorsolateral thorax is most likely the entry wound from the gunshot identified by video observation as shot #2. This assumption is consistent with the described clean-margined exterior aspect described in the report.
   c. The injury to the dog's right thoracic spine is likely the exit wound from the entry wound on the left dorsolateral thorax.

8. Officer Grashorn deliberately firing the second shot at a dog that was no longer any threat to his safety was further unjustified and reckless. This action also directly contributed to the needless and cruel death of the dog Herkimer.

9. Despite the training provided to Officer Grashorn by the LPD, particularly as contained in the PoliceOne training material; and despite the provisions of the Colorado Dog Protection Act; and despite the written policy of the LPD regarding use of force with its direction to use of less- or non-lethal force in dog encounters; and despite the fact that Grashorn shot a dog a second time that was already visibly down, and thus no longer a credible threat; and despite Grashorn's invalid, unlicensed opinion clearly expressed to the plaintiff that her dog was not deserving or in need of medical intervention; and despite the well-known and established record of best practices that include use of less- or non-lethal force; the Loveland Police Department failed to address these deficits during the internal review of the shooting.

   Thus, the LPD has recklessly and deliberately departed from best practices and reasonable control of Officer Grashorn's use of force in this incident. This disregard indicates, in my experience as a Police Lieutenant responsible for the supervision and control of approximately forty (40) Officers and (4) Sergeants during normal daily duty, a lack of

# James W. Crosby M.S.

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *

proper training of Officers and Supervisors of the LPD regarding use of force against dogs.

Overall, it is therefore my opinion, based on my training, extensive experience, and knowledge of best practices and safety, that the fatal shooting of the plaintiffs' dog Herkimer was cruel, needless, and reckless, and that the failure of the LPD to have adequate control and policy enforcement regarding the use of deadly force against dogs in pet dog encounters such as this one made Grashorn's cruel and needless killing of the dog Herkimer all the more likely to occur.

I explicitly reserve the right and ability to amend, modify, or expand this opinion based on the introduction of additional evidence or items including not in my possession. I also reserve the right to research and examine other materials not listed above to assist in establishing further opinions as such may become known or necessary.

Respectfully submitted,

James W. Crosby, CBCC-KA, Consultant

# James W. Crosby M.S. CBCC-KA

*Jacksonville FL USA *
canineaggression@gmail.com

James W. Crosby is a Certified Behavior Consultant, a recognized expert in canine behavior, dog bites and attacks, and shelter management and operations. He is a retired Police Lieutenant from Jacksonville, Florida, and former Animal Control Division Manager in Bay County, Florida. He has combined his police experience and his animal specific experience to train Animal Control and Police agencies on animal issues, including dangerous dog cases and criminal cruelty investigations. Mr. Crosby has taught the Florida Animal Control Certification curriculum and, as Director for Canine Encounters for the National Law Enforcement Center on Animal Abuse, has developed a nation-wide curriculum for Police and Law Enforcement regarding the proper use of force in canine encounters. He is a regular consultant and expert witness regarding legal cases in local, State, and US Federal Courts.

Mr. Crosby has earned a Master of Science Degree in Veterinary Medical Science, specializing in Veterinary Forensics, from the College of Veterinary Medicine at the University of Florida. Mr. Crosby is currently a fully accepted active Candidate for the degree of Doctor of Philosophy from the University of Florida, Graduate School, College of Veterinary Medicine, in Veterinary Medical Science. Mr. Crosby is currently writing his Doctoral Dissertation.

Mr. Crosby actively served under contract as the Division Management Consultant for the City of Jacksonville Animal Care and Protective Services from March 2016 until December 31, 2016. Mr. Crosby re-entered contract service with the City of Jacksonville effective March 2017, and continues to provide expert consulting to the Animal Care and Protective Services Department.

Mr. Crosby has trained Animal Control and Police Officers across the US, in Canada, Italy, and Australia, and spent the summers of 2013 and 2014 in England training and working with the London Metropolitan Police. In 2013 Mr. Crosby trained police, behaviorists, and shelter personnel, while also assisting in the evaluation of five dogs that killed a grandmother in her home. While in England in 2014 he assisted the West Mercia Police investigating and preparing prosecution in a near fatal dog attack. Mr. Crosby has also cooperated with the RSPCA, advising and assisting with animal investigation issues. In 2016 Mr. Crosby conducted three days of basic and advanced behavior seminars in Warsaw, Poland. In 2017 Mr. Crosby assisted the Government of the Australian Capital Territory and the Australian Federal Police in the on-scene investigation of a human fatality by dog attack.

Mr. Crosby has extensive experience in animal crime investigation and teaches crime scene and other investigative procedures to Law Enforcement and Animal Control agencies. He has substantial training and experience in the investigation of animal fighting cases and has extensive experience in the evaluation and rehabilitation of former fighting dogs. He has conducted many behavioral evaluations on former fighting dogs, aggressive and dangerous dogs, and those with mild to severe dog-dog reactivity. Mr. Crosby consulted with the U.S. Marshalls' Service, the U.S. Attorney's Office and the Department of Homeland Security on an international dogfighting case in the Caribbean.

In 2017 Mr. Crosby spent over two weeks in the province of Ontario, Canada, evaluating a group of seized fighting dogs for the Ontario Society for Prevention of Cruelty to Animals and Dog Tales Animal Sanctuary. Because of those evaluations, over 30 dogs were transferred to a facility in Florida for behavioral rehabilitation, a first for Ontario. Mr. Crosby assisted Law Enforcement in a dogfighting case in Polk County, GA wherein 107 dogs were seized. His expert testimony led to conviction, and the suspect was sentenced to 50 years, the longest such sentence in the United States to date.

Mr. Crosby has extensive court experience, both as a prosecution expert and a defense expert in dog related cases. Mr. Crosby has been accepted in many local and municipal courts, multiple State Circuit and Superior Courts, and multiple Federal District Courts as an expert witness.

Mr. Crosby is the Working Group Chair for Police Dog Encounter Training for the National Coalition on Violence Against Animals and is the subject matter expert on Police Dog Encounters and dog behavior for the National Sheriffs' Association. Mr. Crosby is Director, Canine Encounter Training, for the National Law Enforcement Center on Animal Abuse. Mr. Crosby has been elected to serve on the Board of Directors of the Certification Council for Professional Dog Trainers, the only professionally accredited certification organization for dog training professionals in the U.S.

**Director, Canine Encounter Training, National Law Enforcement Center on Animal Abuse.**
**Current**

Duties include development and implementation of a national curriculum for Law Enforcement Canine Encounters, presentation of the training to Law Enforcement command and staff, and informing Law Enforcement and governmental agencies of the need for a consistent response by working Law Enforcement to canine encounters. The program stresses safety of Officers, animals, and the public. Serve as a subject matter expert for collaborative efforts to develop commercial training products to be included in widely used police Law Enforcement use of force training, including virtual simulations.

**Subject Matter Expert for the National Sheriffs' Association on Canine Issues, Canine Aggression, and Canine interaction with police officers and agency.**
**2013 to present**

**Division Management Consultant, Animal Care and Protective Services, City of Jacksonville, Florida.** **March 21, 2016 – 31 December 2016.**

Duties included overall operation and management of the agency, including Shelter Operations, Adoptions and Placement, Behavior and Outreach Services, and Investigation and Enforcement activities. Enforcement activities include municipal Code violations, civil enforcement of State Statutes, and criminal cases that include animal cruelty, abuse, and animal fighting. Current duties include providing expert consulting for the Animal Care and Protective Services Division on the City of Jacksonville on an as-needed basis.

**Professional Dog Trainer/Behavior Consultant/Expert in Dog Aggression and Dog Related Fatalities, Jacksonville, FL** **1999 - Present**
Certified Behavior Consultant-Canine-Knowledge Assessed. Work with dog owners on behavior and aggression issues in pet dogs.  Act as Consultant to owners, Veterinarians and Animal Control agencies on various matters such as training and obedience.  Train dogs for obedience, hunting and tracking.  Expert witness in cases of dog bite, dog attack, and dog related fatalities.  Consulting on dog aggression and dangerous dog cases in US, UK, Canada and India.  Expert evaluation of dangerous and potentially dangerous dogs for civil, criminal, and other cases. Consultant to Bahamas Humane Society, Nassau, The Bahamas. Board of Consultants, National Dog Trainers' Federation (Australia).

**Bay County Animal Control, Division Manager, Panama City, FL** **2008-2010**
Daily oversight of all Animal Control Operations for Bay County and contracted municipalities within Bay County. Lead investigator for all criminal cruelty cases.  Issued findings regarding Dangerous Dogs as defined by local Ordinance Codes and Florida Statutes.  Prepared and presented court cases for Dangerous Dog Hearings and appeals. Interfaced with local Law Enforcement agencies on criminal cases and otherwise assisted Law Enforcement with animal related issues.

**Jacksonville Sheriff's Office, Police Officer/Sergeant/Lieutenant, Jacksonville, FL** **1977-1999**
1977-1987, Police Officer, Patrol Division
1987-1993, Police Sergeant, Patrol Division

1993-1999, Police Lieutenant and Midnight Watch Commander, Zone 4, Patrol Division

Conducted daily police patrol duties; investigated violations of local ordinances and State Statutes; responded to emergency calls; supervised Patrol Squad (as Sergeant), served as Patrol Watch Commander (Lieutenant), including performing employee evaluations and training, investigating complaints on employees, counseling employees, overseeing day-to-day operations and coordinating and scheduling training, administering discipline and serving on disciplinary boards. Ensured employee compliance with Departmental Regulations and guided employee action within the Mission Statement of the Jacksonville Sheriff's Office; responded to and directed critical incident responses. Extensive experience and training in securing and controlling crime scenes, collection of evidence, evidence submission procedures, and evaluating crime scenes for investigative purposes.


**EDUCATION:**

Bachelor of Science Degree, Charter Oak State College (Psychology)
Master's Degree in Veterinary Medical Science, specializing in Veterinary Forensics from the Graduate School, College of Veterinary Medicine, University of Florida.
Accepted candidate, PhD program, University of Florida College of Veterinary Medicine/Graduate School.


**PROFESSIONAL ORGANIZATIONS:**

Associate Member, American Academy of Forensic Sciences (2018-current)
Charter Member, International Veterinary Forensic Science Association
Board of Directors, Council for Certification of Professional Dog Trainers (current)
Member, National Sheriffs' Association
Member, President's Committee on Animal Abuse, National Sheriffs' Association
Member, National Animal Care and Control Association
Member, Training Advisory Committee, National Animal Control Association
Member, International Association of Animal Behavior Consultants
Member, Animal Behavior Society
Professional Member, Association of Pet Dog Trainers (APDT)
Professional Member, Animal Behavior Management Alliance
Member, Florida Association for Behavior Analysis
Working Groups Chair, Police Dog Encounter Training section, National Coalition Against Violence Against Animals.
Board of Directors, Florida Animal Control Association (2008-2010)
Chairman, Board of Directors, Gertrude Maxwell Save-a-Pet Direct Service Organization (Dept. of Agriculture, State of Florida, 2008-2012)
Member, Curly-Coated Retriever Club of America
President, Curly-Coated Retriever Club of America, 2000-2006
Former professional member, Professional Retriever Trainers' Association


**CERTIFICATIONS AND TRAINING:**

Certified Behavior Consultant Canine-Knowledge Assessed (2011-current)
Certified Animal Control Officer (Florida)
Certified Euthanasia Technician (Florida)
Certified Pet Dog Trainer (2005-2008)
American Kennel Club Canine Good Citizen Evaluator # 15403 (current)
American Kennel Club Temperament Testing Evaluator #107364 (current)
Clandestine Graves Investigation, University of Florida Veterinary Forensics (Oct 2008)
Bite Marks Investigation, University of Florida Veterinary Forensics, (Sept. 2008)
"Applied Forensic Behavior Analysis", University of Florida College of Veterinary Medicine, Masters' Degree Program in Veterinary Forensics.
"Animal Cruelty and Interpersonal Violence", University of Florida College of Veterinary Medicine, Masters' Degree Program in Veterinary Forensics.
"Animal Crime Scenes", University of Florida College of Veterinary Medicine, Master's Degree Program in Veterinary Forensics

"Veterinary Forensic Pathology", University of Florida College of Veterinary Medicine, Master's Degree Program in Veterinary Forensics

"Veterinary Forensic Medicine", University of Florida College of Veterinary Medicine, Master's Degree Program in Veterinary Forensics

"Forensic Veterinary Osteology", University of Florida College of Veterinary Medicine, Master's Degree Program in Veterinary Forensics

"Skeletal Trauma Analysis", University of Florida College of Veterinary Medicine, Master's Degree Program in Veterinary Forensics

"Forensic Entomology", University of Florida College of Veterinary Medicine, Master's Degree Program in Veterinary Forensics

"Shelter Animal Behavior and Welfare", University of Florida College of Veterinary Medicine, Doctoral Program in Veterinary Medical Science

"Veterinary Radiology and Imaging", University of Florida College of Veterinary Medicine, Doctoral Program in Veterinary Medical Science

"Pathology in Practice-Advanced Forensic Pathology and Necropsy", University of Florida College of Veterinary Medicine, Doctoral Program in Veterinary Medical Science

Federal Emergency Management Agency certificate, Disaster Response/Animals in Disaster: Awareness and Preparedness, Community Planning

Federal Emergency Management Agency certificate, Livestock in Disasters

Federal Emergency Management Agency certificate, Emergency Program Manager

Federal Emergency Management Agency certificate, Disaster Mitigation

HSUS, Dog Bite Prevention for Law Enforcement

Certificate, HSUS "Evaluating your shelter"

Certificate, Advanced Obedience Instructor

Certificate, "Behavior Evaluation", Puppyworks/Sue Sternberg

Certificate, "Muzzling Dangerous Dogs-Is Canine Profiling Effective", PetSmart Charities/ASPCA

American Temperament Testing Society

"Psychological Aspects of Maltreatment of Animals", ASPCA (April 2012)


**Publications:**


Public Service announcements broadcast on WKGC Radio, Panama City, Florida, as part of a recurring program giving pet advice from 2008 through 2009.


Master's Thesis Research (Publication August 2016) "The Use of Specific Evidence in the Investigation of Human Dog Bite Related Fatalities".


Chapter "Investigation of Human Dog Bite Related Fatalities" in Dog Bites: A Multidisciplinary Approach, Carri Westgarth PhD and Daniel Mills, PhD, editors, The University of Lincoln Press, Lincoln, Lincolnshire, England, 2017.


Chapter "Anatomy and Morphology of Dog Bites", in Dog Bites: A Multidisciplinary Approach, Carri Westgarth PhD and Daniel Mills, PhD, editors, The University of Lincoln Press, Lincoln, Lincolnshire, England, 2017.


Blog "Canine Aggression Blog", canineaggression.blogspot.com


Crosby, James W., and Chelsea Rider. 2017. *Changing the Narrative: Improving Law Enforcement and Dog Encounters to Reduce Lethal Incidents and Improve Community Relations with Pet Owners: Literature Review.* Washington, DC: Office of Community Oriented Policing Services.


"Law Enforcement Dog Encounters Training", a full instruction course on safe interactions between police officers and domestic dogs, supported by the National Sheriffs' Association and the National Law Enforcement Center on Animal Abuse and currently under review for approval by the Department of Justice-Office of Community Oriented Policing Services (COPS).


"Dangerous Dog Investigations" in Humane Animal Control: Effective Enforcement, Shelter Management, Local Government Support and Community Engagement, Best Friends Animal Society Publications, Kanab, Utah, 2018.

**COURT CASES JAMES W. CROSBY HAS TESTIFIED IN OR PROVIDED EXPERT OPINION IN DURING THE PAST FOUR (4) YEARS:**

2014

Criscuolo v. City of Moses Lake (case sent for trial by appeals court)    Washington    Federal
    Plaintiff        Police Shooting

Gonzalez v. City of Pico Rivera            California        Federal        Plaintiff        Police Shooting

Russel and Hope Lane v. The City of Round Rock, Texas and the Round Rock Police Department
    Texas        Federal        Plaintiff        Police Shooting

Hinkley v. H.M. Montgomery and H.M. Montgomery Trucking    Virginia Circuit        Plaintiff        Dog Bite

2015

Branson v. The City of Commerce City, Colorado        Colorado        Federal        Plaintiff
    Police Shooting

Moore v. The City of Erie, Colorado        Colorado        Federal        Plaintiff        Police Shooting

Fisher v. Adams County, Colorado            Colorado        Federal        Plaintiff
    Police Shooting

Rochelle Goodsell v. American Family Mutual Insurance        Washington    Circuit            Plaintiff Dog Bite

2016

R v McGarrity & Dickson [2016] North Tyneside MC, (unreported)  UK Magistrates' Court            Defendant
    Dog bite

Bradley Ray Beck Jr. vs Ryan Smith, Spokane County Sheriff's Department et al. Washington        Federal
    Plaintiff        Police Shooting

State of Florida v. Javon Dade    Florida            Circuit (criminal)        Defendant        Fatal dog attack

Faibvre v. Murphy (LA).            Louisiana        Circuit            Plaintiff Dog bite

Jessica Marquez v. Officer Michael Robinson (Pleasant Hill, CA PD)        California        Federal
    Plaintiff Police Shooting

Bryan and Katherine Thomas v. Ric Bradshaw as Sheriff of Palm Beach County, FL
    Florida            Federal        Plaintiff Police Shooting

2017

Bonnie Lee v. Kern County Probation Department        California        Federal        Plaintiff Police
Shooting

Steven Cunningham v. United Parcel Service, et al.        Alabama        Circuit  Plaintiff Dog Bite

Ian Anderson v. City of San Diego        California        Federal        Plaintiff        Police Shooting

Almendarez v. the City of Hollywood (FL) et al.     Florida          Federal          Plaintiff Police Shooting

Ksenia Benz v. Andrew Kaupert et al.     Maryland     Circuit          Defendant     Dog Bite

2018

Walker v. North Las Vegas Police Dept.     Nevada          Federal          Plaintiff          Police Shooting.

Wheeler v. City Of Henderson Police Department     Nevada          Federal          Plaintiff          Police Shooting

Paul Szvoren and Vianna Stewart v. Ohana Animal Rescue and Maricopa County, Maricopa County Animal Care     Arizona          Superior          Plaintiff          Dog Bite

Aliado v. Souza and Souza     Hawai'i Circuit          Plaintiff          Fatal dog attack

State of Colorado v. John Doe at large subject (Fremont County Sheriff's Office     Colorado          Superior          Criminal Homicide

2019

Bradshaw v. Moreton Bay Regional Council [2018] QCATA 140     Queensland, Australia     Queensland Civil and Administrative Tribunal     Dog Bite

Villalpando v. Don Bell D/B/A Pencils ETC., et al     Texas     Civil/County     Plaintiff     Dog Attack

James v. Maricopa County Animal Services     Arizona          Federal          Defendant     Dog Bite

Travis County Texas v. Hector Luis Guzman     Texas     Circuit          Plaintiff     (State     Prosecutor)     Criminal Deadly Conduct-Dangerous Dog

State of Texas v. Peter Scott Lucas     Texas     Circuit          Defendant (Public Defender)     Negligent Homicide

City of Aurora v. Tracy Prim     Colorado          Municipal          Defendant     Dangerous Dog

Zorich v. Zavorka and St. Louis County Police     Missouri          Federal          Plaintiff          Police shooting

Medieros v. Albert Duperre, Chief of Police of the City of Fall River     Massachusetts          District Court          Plaintiff Dangerous Dog

Azurdia v. City of New York Police Department     New York          Federal          Plaintiff          Police Shooting

Wilk v. the City of Concord Animal Services     New York          Municipal          Defendant     Dangerous Dog

McAfee v. Town of Marlborough Massachusetts     Massachusetts          County          Defendant     Dangerous Dog

Barbara Schneider, as custodian of the estate of Klonda Richey, v. Mark Kumpf, Montgomery Animal Service Center          Ohio          Federal          Plaintiff          Fatal Dog Attack

Alvarez v. City of Philadelphia Animal Care and Control Team    Pennsylvania    Circuit    Defendant    Dog Bite

2020

Jensen v. Douglas County, Colorado    Colorado    County    Defendant    Dangerous Dog

McAfee v Douglas County, Colorado    Colorado    County    Defendant    Dangerous Dog

State of Georgia vs. Samuel Brown and Angel Brown    Georgia    Circuit    Prosecution    Fatal Dog Attack (Criminal Homicide)

Karen May v. The Town of Abington, MA    Massachusetts    Municipal    Defense    Dangerous Dog

Meer, Meer, and Meer v. County of Erie, Erie County Sheriffs' Office et.al.    New York    Circuit    Plaintiff Police Shooting

Friedel vs. Park Place Community    Florida    Circuit    Defendant    Dangerous Dog/Civil Eviction

Boring v. City of Worthington, Dubuque Regional Humane Society    Iowa    District    Cruelty

Vaseleros-Stevenson v. Calvert County, Maryland    Maryland    Federal    Plaintiff Police Shooting

Marie v. Aldritch and Deryckx    Washington    Superior    Plaintiff    Dog bite.

Ressler v. Heisel    Florida    Circuit    Plaintiff    Dangerous Dog/Dog Bite

Paradise Island Property vs. George    Circuit    Plaintiff    Dangerous Dog/Civil Eviction

2021

Ruslander v. Randolph Towers Condominium Association.    Maryland    Circuit    Defendant Dangerous Dog/Dog Bite

Villar v. City of San Diego Animal Services et. al.    California    Superior    Plaintiff Fatality/Animal Services Practices and Policy

2022

Lavergne v. The Princeton and Excess Lines Insurance (for Rapides Parish Sheriff's Department)    Louisiana    Federal    Plaintiff Police Shooting

Janes and Tinsley v. City of North Las Vegas    Nevada    Federal    Plaintiff    Police Shooting

These cases include cases in which I have appeared both for and against the owners of dogs.

## Summary, selected consulting, 2012-present:

2021: Presenter, Florida Association of Medical Examiners Annual Conference
2020: Presenter, International Association of Animal Behavior Consultants, "Aggression and Dog Bite Investigations".
2020: Presentation, Animal Behavior Society, "Efficacy of the use of the "fake dog" in evaluating dog-dog aggression."
2020: Consult on scene with Crawford County GA Sheriff's Office on dog bite related homicide investigation.
2019: Presenter, National Animal Care and Control Association 2019 Conference, Orlando, FL.
2019: Hurricane response, Bahamas Humane Society, Nassau, Bahamas (Hurricane Dorian).
2019: Shelter Review and Assessment, Desert Haven Animal Society, Pahrump, NV.
2019: Dangerous Dog Evaluation, Chicago Animal Control Department, Chicago, IL
2019: Presenter, 2019 Annual Conference, International Association of Animal Behavior Consultants, Houston, Texas.
2019: On site consult with Bahamas Humane Society, Nassau, Bahamas, regarding training staff, oversight, and shelter improvements.
2019: Consult with and provide training regarding aggressive dogs and investigations, Philadelphia Animal Care and Control, Philadelphia, PA.
2019:Instructor, LEDET, Converse County Sheriff's Office, Converse County, WY.
2018: Appointed to President's Committee on Animal Abuse, National Sheriffs' Association, Washington, DC.
2018: On scene investigation, Police shooting, Henderson, NV re: Wheeler v. City of N. Las Vegas and City of Henderson Police.
2018: Instructor, LEDET, Regional Police Academy, Nye County Sheriff's Office, Nye County, NV.
2018: Instructor, Law Enforcement Dog Encounters Training (LEDET), Las Vegas Metro Police Civil and Constable Division, Las Vegas, Nevada.
2018: Presenter, "Use of Force and Police/Dog Encounters", Animal Prosecution Summit, Baltimore, MD.
2018: Presenter, "Use of Force, Dogs and Police", Association of Prosecuting Attorneys Animal Abuse Prosecution Conference, Louisville, KY.
2018: Speaker, Canine Encounter Training, International Association of Chiefs of Police, 2018 Conference, Orlando, FL.
2018: Speaker, Animal Law Conference, State of Georgia Bar Association, Atlanta, GA.
2018: On site response, dog bite related fatality, Jacksonville, FL.
2018: On site consultation, Homicide Investigation, Fremont County (CO) Sheriff's Office.
2018: Chair, expert panel advising Division of Animal Services, Australian Capital Territory (Canberra, Australia) regarding Animal Services policy and procedure including dog attacks, Dangerous Dogs, dog bite investigations, community outreach, and legislative policies.
2018: Featured speaker, Georgia Animal Control Association 2018 Conference.
2017: Presenter, Association of Prosecuting Attorneys, Portland, OR, "Police Use of Force in Dog Encounters".
2017: Assist on scene Australian Federal Police in Canberra, Australian Capital Territory, Australia, on a human fatality and serious injury to a second victim by dog attack.
2017: Presenter and keynote speaker, three days of seminars on canine aggression, animal cruelty investigation, and fatal dog attack investigation in Melbourne, Victoria, Australia for the Australian Institute of Animal Management.
2017: Presenter, "Anatomy of Fatal Dog Attacks", Colorado Animal Welfare Conference, Black Hawk, Colorado.
2017: Assist Polk County (GA) Police and Animal Control on scene, Cedartown, GA, regarding dog fighting seizure of 109 dogs, evaluation and processing of dogs.
2017: Presenter, "Police Officers and Canine Encounters: Changing the Narrative", National Sheriffs' Association 2017 Conference, Reno, NV.
2017: Evaluated 44 fighting dogs from three different criminal dogfighting cases, various locations in the Province of Ontario, Canada, for the Ontario Society for the Prevention of Cruelty to Animals and Dog Tales Animal Sanctuary, King City, Ontario, Canada.
2017: Presenter, Georgia Society for Prevention of Cruelty to Animals, "Canine Aggression" and "Handling Aggressive Dogs", Atlanta, GA.
2017: Presenter, "Investigation of Fatal and Serious Dog Attacks", Atlanta, GA, CEU Credit of 6 hours granted by the Georgia Bar Association and the Georgia Commission on Police Standards and Training.
2017: Presenter, Florida Animal Control Association Conference, "Dangerous Dog Law" and "Investigation of Fatal Dog Attacks", Orlando, FL.
2017: Co-Chair, working group "Police and Dog Encounters", National Coalition on Violence Against Animals.
2016: Hurricane Response and Animal Issues oversight, Hurricane Matthew, Jacksonville, FL.
2016: Assist Law Enforcement on life threatening dog attack on child, Putnam County, FL.

2016: On scene investigation of human fatality, Jacksonville, FL.

2016: Presenter. Participant and keynote speaker at the Department of Justice Community Oriented Policing Service Summit on Law Enforcement Use of Force Against Animals, Washington DC.

2016: Consulting with Federal Law Enforcement on multi-national dog fighting investigation and arrest (open investigation, location confidential until trial).

2016: Presented basic and advanced seminars, Canine Aggression and Dangerous Dogs, Warsaw, Poland.

2015: Presenter, National Coalition on Violence Against Animals, National Sheriff's Association Winter 2016 Conference, "Use of Force Against Companion Animals by Police-Legal Concerns and Investigations", Washington, DC.

2015: Presenter, Association of Prosecuting Attorneys National Animal Law Prosecution Conference, "Use of Force by Police on Companion Animals by Police", Pittsburg, PA

2015: On scene response, The Bahamas (southern islands of Longs Island, Acklins Island, San Salvador, Crooked Island), animal conditions and recovery plans, Hurricane Joaquin

2015: Emergency response, Putnam County (FL) Animal Services, regarding evaluation of fifty-four (54) severely neglected and behaviorally challenged Chow dogs: evaluate and assess all 54 dogs, guide rescue efforts, interact with Rescue groups. Handle and assist in the Veterinary examination and spay or neuter of all 54 dogs.

2015: Presenter, Georgia Bar Association Conference on Animal Law and Legislation, Atlanta, GA.

2015: Training consultant, First Coast No More Homeless Pets, Jacksonville, FL on four (4) prison-based dog training programs for placement of shelter dogs.

2015 Presenter, Southeast Animal Control Association 2015 Conference, Atlanta, GA on "Dangerous and Aggressive Dogs".

2015: Present series of seminars on Dog Aggression for Veterinary Practice, Southern New Jersey, sponsored by NJ Aid for Animals.

2015: Present seminar, Cornell University, Utica, NY, Dog Aggression.

2015: Presenter, "Dangerous and Aggressive Dogs" Florida Animal Control Association yearly conference, Lake Buena Vista, FL

2015: Expert Consultant, development of California Commission on Peace Officer Standards and Training course on Officer Safety and Dog Encounters, CA POST, San Diego, California.

2015: Expert Participant, Roundtable on Use of force in Dog Encounters, National Sheriff's Association/National Coalition On Violence Against Animals, National Sheriff's Association Winter Conference, Washington DC

2014: On scene forensic investigation of police involved pet shooting in New York City.

2014: Present Law Enforcement Training Seminar, "Investigating Serious and Fatal Dog Attacks", Dayton Police Department and Montgomery County Animal Services, Dayton, Ohio

2014: On site investigations of police involved shootings in Round Rock, Texas and Canyon, Texas.

2014: On site investigation of police involved shooting of a dog in Charlotte, NC.

2014: Nassau, The Bahamas. On site (July 2014) at the Bahamas Humane Society addressing a nation-wide outbreak of Canine Distemper Virus. Coordinating assistance from the University of Florida Maddie's Fund Shelter Medicine Program regarding testing, tissue sampling, and disease containment. Guiding the Bahamas Veterinary Medical Association in establishing sanitary and containment protocols. Obtained assistance from Humane Society International, supplying 1000 doses of Canine Distemper Vaccine. Leading mass-vaccination mission in Nassau, expecting to expand mission to out islands of The Bahamas. Assisting epidemiology experts in Florida in trying to trace the origin of what may be a vaccine-resistant strain of CDV.

2014: Present seminar "Dog Bite Prevention", Folkestone, Kent, England.

2014: Present seminar, "Advanced Investigation of Dog Bite Fatalities", Wood Green Animal Sanctuary, Cambridgeshire, England.

2014: Assist West Mercia Police, Herefordshire, England in the investigation of a life-threatening dog attack, including participation in forensic necropsy with the Royal Veterinary College, Hawkshead, Hertfordshire, England.

2014: Expert Presenter "First National Bite Prevention Conference", RAF Odiham, Hampshire, England with Victoria Stilwell.

2014: Present series of seminars "Handling Aggressive Dogs", New Jersey and Pennsylvania, sponsored by New Jersey Aid for Animals.

2014: Present seminar "Handling Dangerous Dogs for Animal Care Professionals", Alfred State College, State University to New York (SUNY), Alfred, New York.

2014: Present advanced seminar for Law Enforcement, "Dangerous Dog Investigations for Law Enforcement", Alfred State College, State University to New York (SUNY), Alfred, New York.

2014: Expert Presenter "Aggressive Dogs", Georgia Regents' University Medical Center, Augusta, Georgia

2014: Expert witness for plaintiff, Criscuolo vs City of Moses Lake, WA, Federal District Court. Plaintiff alleged excessive use of force by police in shooting of dog. Jury trial found in favor of plaintiff.

2014: Expert report for plaintiff, Gonzalez vs City of Pico Rivera, Central District of California regarding use of force by police shooting dog. Settlement in favor of plaintiff.

2014: Presenter, "Dangerous Dogs and Dangerous Dog Law", Florida Animal Control Association yearly conference, Cocoa Beach, FL.

2014: Provide expert training for entire Department, Holly Hill Police Department, Holly Hill, FL regarding appropriate use of force and less-lethal use of force options in dog encounters.

2013: July 2 – current: Bahamas Humane Society, Nassau, The Bahamas. Consulting regarding restructuring of agency operations, policies, procedures. Training staff. Oversight of daily operations and shelter management. Interface with Government officials and departments regarding animal issues in the islands of The Bahamas. Conduct cruelty and neglect investigations and train/guide existing Inspectorate Officers regarding professional investigations. Guide physical facility improvements.

2013: Consult on alleged dog bite case regarding a Labrador mix named Phineas in Salem, Missouri. Prepare expert report for trial. Testify in Circuit Court as Expert.

2013: Present Dangerous and Aggressive Dog and Bite Investigation Training Seminar, Smerillo, Fermo, Italy, June 8 and 9, 2013

2013: Respond and investigate fatal dog attack, 2-year-old victim, Atlanta, GA.

2013: Expert Presenter, Miami Dog Bite Prevention Conference, April 26th, Miami, FL with Victoria Stilwell

2013: Expert Presenter, Miami FL, Law Enforcement Seminar, "Investigating Serious and Fatal Dog Attacks", April 25th

2013: Nassau, Bahamas, April 13-24th, 2013 consulting with the Bahamas Humane Society.

2013: Cambridgeshire, England, April 8 and 9, presented a two-day seminar on Dangerous Dogs, Dog Aggression, and Fatal Dog Bite Investigation for trainers, Behaviorists, Police and Dangerous Dog Officers.

2012: Consult and train with personnel of the Bahamas Humane Society, Nassau, The Bahamas

2012: Consult and assist in investigation of fatal dog attack on 83-year-old man with Leeds, Alabama P.D. in Leeds, Alabama.

2012: Present Law Enforcement training seminar at Jeff Davis Environmental Training Center, Hazelhurst, GA., regarding Investigation of Serious and Fatal Dog Attacks.

2012: Respond to and assist GBI and Seminole County (GA) S.O. on investigation of fatal attack on 4-year-old child, Donalsonville, GA.

2012: Consult on dog evaluation, Bloomfield, New Jersey

2012: On scene investigation and evaluation of dogs involved in human fatality, Philadelphia, PA.

2012: Expert Presenter of seminar for Law Enforcement Officers, "Investigating Fatal Dog Attacks", Springfield, Missouri

2012: Featured speaker, National Dog Bite Investigation, Treatment and Prevention Conference, Atlanta, GA

2012: On scene investigation and evaluation of involved dog, fatal attack on infant, McKeesport, PA.

# James W. Crosby MS CBCC-KA
# Canine Aggression Consulting LLC

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

## EXPERT FEE SCHEDULE

Fatal dog bite investigations, bite consultation, use of force review, dangerous dog, shelter audit and assistance: all cases are billed as follows:

Initial investigation, review of facts, consultations, and all other duties through the issuance of a final incident/investigation report, except for travel and lodging is at a flat rate of $5000.00, to be paid at a rate of $2500.00 at acceptance of the case and $2500.00 at case conclusion unless otherwise negotiated (usually for Government billing procedures).

Depositions for opposing counsel are billed at $200.00 per hour, three (3) hour minimum payment. Preparation for deposition is billed as two hours ($400.00) for a total minimum deposition fee of $1000.00. Payment for deposition by opposing counsel is expected within thirty (30) days of the deposition. Cancellation of deposition by opposing counsel with less than 48 hours' notice will be billed the two-hour preparation fee.

Air travel will be in standard (not Basic Economy or its equivalent) Coach or better class as agreed upon. Bag fees may apply as expenses, depending on airline. Separate seat upgrades are the responsibility of the expert and are not part of billed travel expenses.

Dangerous Dog evaluations, which include separate hands-on behavioral evaluation and report of observations and recommendations including video of the evaluation are $1000.00 per dog plus travel if needed.

Court testimony, if needed, is billed at $1,000.00 per day of testimony plus travel and lodging expenses. If desired by the client, one day pre-trial preparation, and any other days of observation and attendance at non-testimony days as an advisor to counsel will be billed at $500.00 per day.

NOTE: If, due to COVID or other restrictions any hearings or trial are conducted remotely through Zoom or other service(s) then there will be no further charge for trial, hearings, or other appearances, and obviously no fee for travel.

Checks should be payable to Canine Aggression Consulting LLC.

Respectfully,

# James W. Crosby MS CBCC-KA
# Canine Aggression Consulting LLC

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

James W. Crosby
Jacksonville, FL