IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-CV-02502-RM-NRN

WENDY LOVE, and
JAY HAMM,

      Plaintiffs,

v.

OFFICER MATHEW GRASHORN, in his individual capacity,

      Defendant.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT GRASHORN'S FED. R. EVID. 702 MOTION TO EXCLUDE EXPERT TESTIMONY [ECF 110]**

---

      Defendant Grashorn has filed a *Motion* to exclude portions of Plaintiffs' expert James Crosby's opinion/testimony at trial. Plaintiffs respectfully respond as follows:

### INTRODUCTION

      In the late afternoon of June 29, 2019, Plaintiffs stopped in an empty business parking lot to fix an ice box they were using to deliver firewood. The business owner saw them on remote video surveillance and asked Loveland PD to send an officer to make sure Plaintiffs did not use his dumpster. Loveland PD Officer Mat Grashorn arrived and saw that Plaintiffs were nowhere near the business building or its dumpster. He also saw that they had a large, unsecured dog resting on the pavement near them as they worked on the ice box. Grashorn had received all the standard police training both as it relates to safely handling dog encounters and safely making contact with citizens. He was aware of Colorado's Dog Protection Act, passed in 2013, which expressly legislated heightened protection for the lives of family's pet dogs in this state and mandated specific training and directives to law enforcement regarding how to identify a dog that was aggressive and regarding

1

the common sense, non-lethal measures that must be utilized prior to shooting a citizen's dog if reasonably assessed to be aggressive. He had received that additional Act-mandated training as well. He ignored all of it. Grashorn was singularly preoccupied with his hope of catching Plaintiffs engaged in some kind of crime. So, despite seeing their large unsecured dog, he decided to park 30 yards away from them, quietly close his door, not announce himself, not give Plaintiffs an opportunity to secure their dog, not wait for his partner, and to instead attempt to sneak up on them on foot.

Plaintiffs' unsecured dog Bubba, naturally and foreseeably, heard Grashorn's approach before Plaintiffs did. He got up (rather slowly, as he was an old boy at 16 years old) from the pavement to go greet Grashorn. At this moment, Grashorn was standing right next to his patrol vehicle. If fearful of Bubba, he could have gotten back into his car. If fearful of Bubba, he could have pulled out his non-lethal Taser. If fearful of Bubba, he could have pulled out his non-lethal baton. All of these non-lethal options (and more) are long-established components of good police practice and procedure across the country. But instead, Grashorn pulled out his firearm, pointed it at Bubba, and yelled something. This alerted Plaintiffs to Grashorn's presence, and they immediately called Bubba back. Bubba stopped and returned to them. The verbal commotion caused Plaintiffs' 14-month-old mixed breed dog Herkimer, however, who had been resting inside the truck, to pop out of the truck's open door to see what was going on. When he saw Grashorn, Herkimer playfully bounced over to greet him. Herkimer did not growl, did not bark, showed no teeth, had no hackles up, his tail showed a nice, relaxed wag, and he did not even run in a direct line towards Grashorn. Plaintiffs immediately called out for Herkimer to return. He slowed and began to peel away to Grashorn's left. Grashorn turned himself to the left, continuing to track Herkimer with his gun, and then he put a bullet through Herkimer's head. Herkimer collapsed to the ground. Then Grashorn shot him again through the chest. Herkimer's injuries were not survivable. He had to be euthanized.

Plaintiffs filed the instant lawsuit pursuant to 42 U.S.C. § 1983, alleging Grashorn's needless destruction of their pet dog Herkimer was an unreasonable seizure in violation of the Fourth Amendment. Plaintiffs retained and endorsed Jim Crosby as an expert in: police training, police practices, police use of force, and canine behavior. Mr. Crosby has over twenty-two years of experience in law enforcement, serving as a Patrolman, a Sergeant, and a Lieutenant. He has been extensively trained in the use and regulations of less- and non-lethal force options in police work. With the US Department of Justice Community Policing Services Division, he helped write and approve the curriculum and manual for *Law Enforcement Dog Encounters Training*.

Defendant Grashorn has filed a Motion to exclude portions of Mr. Crosby's expert opinions and testimony. *Grashorn Motion to Exclude Expert Testimony of James W. Crosby [ECF 110]*. Most of the arguments lodged against Mr. Crosby's opinions and testimony appear better suited for a motion *in limine*, as Defendant Grashorn makes no challenge to Mr. Crosby's specialized training, experience and/or qualifications, and he also makes no challenge to the reliability of any methodology employed by Mr. Crosby in reaching his opinions. Instead, Grashorn's challenge to the admissibility of portions of Mr. Crosby's opinion and testimony relates primarily to claims that Mr. Crosby's opinions "state facts to be determined be a jury," claims that Mr. Crosby's opinions impermissibly "reach ultimate issues," a couple claims that some of the sentences in his report "are irrelevant," along with several other challenges which have no basis in law. Plaintiffs will attempt to address them each in turn.

## STANDARD OF REVIEW

As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92 (1993); *Truck Insurance Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). The Tenth Circuit employs a two-step analysis when considering the admissibility of expert

3

testimony under Rule 702. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Defendant Grashorn's motion to exclude the testimony of Mr. Crosby implicates only the first, codified in Rule 702(a), which examines, *inter alia*, whether the expert's testimony "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). This inquiry "goes primarily to relevance," *Daubert*, 509 U.S. at 589, but the court may consider additional factors, such as whether the testimony goes to a matter within the common knowledge and experience of jurors, or whether it usurps the jury's role in determining an ultimate issue of fact or the court's role to instruct the jury on the law, *see United States v. Rodriguez-Feliz*, 450 F.3d 1117, 1123 (10th Cir. 2006).

The Court has broad discretion in determining whether expert testimony is sufficiently relevant to be admissible. *See Truck Insurance Exchange*, 360 F.3d at 1210; *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000). The overarching purpose of the court's inquiry is "to make certain that the expert … employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Goebel v. Denver and Rio Grand Western Railroad Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Kumho Tire*, 119 S. Ct. at 1176). However, Rule 702 is properly construed as a rule of inclusion rather than one of exclusion, and "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, *Advisory Committee Note*. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 113 S. Ct. at 2798.

## ARGUMENT

**A. Components of Mr. Crosby's report which Defendant claims impermissibly "attempt to reach ultimate conclusions of fact" are a normal part of any expert report and there is no lawful basis for their exclusion under 702.**

Defendant Grashorn first takes issue with Mr. Crosby's report "spout[ing] facts and dressing them up as opinions." *Motion* [ECF 110] at 4. This argument is difficult to track. Any expert opinion will have to set forth the materials he reviewed and his perception of the case's facts in order to then sensibly offer any expert opinion regarding the same. In any event, Defendant Grashorn specifically lists the following portions of Mr. Crosby's report as being inadmissible by this argument (namely, that they "attempt to establish the facts of the case"), and Plaintiffs will attempt to respond to each of them in order:

1. Mr. Crosby stated in his "Summary of Events" section that he observed on the video the Plaintiffs to be "acting in a peaceful and lawful manner making needed repairs to a transport box on their truck" and that "the property owner had confirmed to Loveland Police Dispatch that Love and Hamm had not tampered with or disturbed his dumpster, or indeed committed any visible unlawful action." Mr. Crosby also stated that "[d]uring his actions during contact with Love and Hamm, Grashorn shot and killed the 14-month-old mixed-breed puppy known as Herkimer that belonged to Love and Hamm."

There is nothing objectionable about these statements in Mr. Crosby's opinion. He is not instructing the jury about the applicable law. He is reiterating facts relevant to the case and the opinions he rendered in it. If Defendant Grashorn is taking issue with Mr. Crosby describing Plaintiffs appearing on video to be "acting in a peaceful and lawful manner," simply because he disagrees with it, then this is a subject for cross-examination. It is worth noting here that Defendant Grashorn's own police practices expert Steve Ijames made similar observations and statements of his perception of the facts throughout his own report (Ex: "The dispatched call for service raised concerns with the primary officer (Grashorn) as to the exact nature of what was occurring (trespass, trash dumpster violation, burglary, drug offense), and that resulted in the discharge of his service handgun.").

5

2. In "Information Considered and Pertinent Observations" Mr. Crosby stated that Plaintiffs "were not approaching the building, did not evidence any indication of committing a crime, and have made no attempt to conceal their presence."

This is again an unobjectionable statement by Crosby of what he viewed on the video. These are pertinent observations because these are facts that impact the reasonableness of Grashorn's actions and reveal portions of his testimony to be inconsistent with other facts in evidence. If Grashorn disagrees with these observations, then, again, that is subject for cross-examination, not grounds for exclusion of the testimony.

3. In "Information Considered and Pertinent Observations" Mr. Crosby stated that Officer Grashorn drew his sidearm and targeted Bubba and did "not attempt to secure or deploy any less-lethal means of deterrent" as stated by the Loveland Police Use of Force policy or the Colorado Dog Protection Act.

These are facts viewable on video. These are observations pertinent to Mr. Crosby's opinions that will assist the trier of fact in determining whether and how Defendant Grashorn's actions on June 29, 2019 comported to existing best practices in law enforcement and encounters with dogs. There is no legal basis for the exclusion of this portion of Mr. Crosby's report.

4. In "Information Considered and Pertinent Observations" Mr. Crosby stated that Herkimer was "focused" on Bubba, not Officer Grashorn, and that Herkimer approached Bubba with a bouncy playful gait, wagging his tail, and presenting physical characteristics consistent with a positive and relaxed dog.

5. Mr. Crosby states that "owner diverts Bubba's attention to himself for recall" and that Herkimer with bouncy, relaxed gait, tail wagging and ears up, moves toward Grashorn."

6. Mr. Crosby stated that "Love and Hamm opine that Herkimer's behavior was that of an affiliative nature, moving with a bouncy and excited manner consistent with an adolescent, sociable dog." Love and Hamm assert that Herkimer never barked, growled, or gave any audible indication of potential aggressive display or violent contact.

7. Love and Hamm assert that Herkimer never barked, growled, or gave any audible indication of potential aggressive display or violent contact.

8. Mr. Crosby stated that "the bodycam videos do indicate that there was a substantial delay between Grashorn shooting Herkimer and allowing the plaintiffs to transport Herkimer to veterinary care."

6

9. *In "Opinions" Mr. Crosby stated that "the video shows Herkimer clearly wagging his tail side to side energetically" and that Herkimer was a curious and friendly dog unlikely to cause injury. (Note: The latter half of this sentence actually misstates Mr. Crosby's opinion in the report, as Crosby actually said "Grashorn should have perceived Herkimer as non-threatening, or at the very least as presenting minimal risk of injury." He did not declare Herkimer to be a curious and friendly dog in fact.)*

10. *Mr. Crosby stated that "Grashorn never took any steps to disengage from Bubba and Herkimer, when they approached; never tried to use less-lethal force; and never tried to observe" after arriving at the location.*

11. *Mr. Crosby stated that "Grashorn denied the plaintiffs the ability to take Herkimer for medical aid, saying 'Ma'am, you're not going to be able to help him.'"*

For all of these portions (4)-(11) listed by Defendant Grashorn as objectionable for the apparent offense of "attempt[ing] to establish the facts of the case," *Motion to Exclude* [ECF 110], p. 6, there is no lawful justification for their exclusion under FRE 702. Quite to the contrary, the expectation in FRE 702 is that every expert opinion "must provide the underlying facts and basis of the expert opinion." *Langille v. McLane FoodService, Inc.*, 2014 WL 2892657, at *5 (D. Wyo. Apr. 18, 2014). These are those facts. "Opinions are valueless as evidence without exploration of the underlying facts and rationale showing the path from the facts to the opinion." *Id.* (quoting *U.S. v. R.J. Reynolds Tobacco Co.*, 416 F.Supp. 316, 325 (D.N.J. 1976)). *See also Richter*, 796 F.3d at 1195 ("Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field."). These are facts viewable on video, pertinent to Mr. Crosby's opinion regarding dog behavior and demeanor and what a reasonable law enforcement officer who has received Grashorn's training should similarly observe, and they are facts Crosby relied upon in reaching his expert opinion that Grashorn's shooting of Herkimer was needless and not justified pursuant to any reasonable police training or practices. Prohibiting Mr. Crosby from testifying to the facts he relied upon in reaching his opinions would essentially deprive the jury of the ability to evaluate Mr. Crosby's expert opinions themselves.

7

Defendant does not challenge Mr. Crosby's qualifications, nor could he, as Mr. Crosby is well-qualified under FRE 702 to give expert testimony on dog behavior and aggression and generally accepted practices for use of force during dog encounters. All that Defendant Grashorn's recitation of these portions of random sections of Mr. Crosby's report does is show that Mr. Crosby's "opinions are based on a reliable application of his principles and methods to the facts of this case." *See, e.g.*, *Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 293 (N.D. Ill. 2005). To the extent that Defendant Grashorn disagrees with Mr. Crosby's perception of a fact, his disagreement is not a basis for exclusion; it merely establishes the fact to be disputed. That is an arena for cross-examination, not a proper subject for a motion to exclude under FRE 702. *See also* Fed. R. Evid. 702, *Advisory Committee Note* ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

**B. Mr. Crosby does not opine as to the credibility of witnesses. He does make statements regarding inconsistencies he observed in the video versus Grashorn's testimony, and these observations are relevant and helpful to the jury in determining the reasonableness of Grashorn shooting Plaintiffs' pet dog.**

Grashorn contends in his motion that "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony." Plaintiffs agree. However nowhere in Mr. Crosby's report does he state that Grashorn is a liar or not a credible witness. Instead, Mr. Crosby highlights specific facts and portions of Grashorn's own testimony that are not consistent with the evidence, that are not consistent with accepted best police/use of force practices, and/or that are not consistent with his training. This is very different from offering an expert opinion as to someone's credibility generally. Both portions of Mr. Crosby's report highlighted in Grashorn's Motion to Exclude under this theory of inadmissibility are opinions supported by Mr. Crosby applying his experience and specialized

8

knowledge to pertinent facts – which include specific inconsistencies in Grashorn's testimony like those raised by Crosby. This is admissible testimony, both relevant and helpful to a jury in determining whether it was reasonable for Grashorn to destroy Herkimer.

### C. There are no portions of Mr. Crosby's report that offer impermissible legal conclusions or that provide impermissible legal analysis.

"The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *Pinon Sun v. Atain Specialty Insurance Co.*, 2020 WL 1452166 at *6 (D. Colo. Mar. 25, 2020) (quoting *U.S. v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). Expert testimony on legal issues has been excluded "because it interferes with the function of the judge in instructing the jury on the law." *U.S. v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). "To determine whether expert testimony impermissibly instructs the jury on how it should rule, courts consider the basis the expert provides for his or her opinion." *Pinon Sun*, at *6 (citing *Richter*, 796 F.3d at 1195-96). "Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment." *Dazey*, 403 F.3d at 1171-72. "[A]n expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Id.* at 117 (citing *U.S. v. Simpson*, 7 F.3d 186, 188-89 (10th Cir. 1993)).

This is why Defendant Grashorn's argument here fails. Just like their own expert Mr. Ijames, Plaintiffs' expert Mr. Crosby at times provides an opinion as to the reasonableness of Grashorn shooting Plaintiffs' pet dog, but always when providing such an opinion, he explains the criteria and facts upon which that opinion is based so that the jury is not being *told* what to conclude but instead has at its disposal all the information it needs to exercise its own independent judgment in evaluating Mr. Crosby's opinion.

9

Defendant Grashorn objects specifically to the following excerpts of Mr. Crosby's opinion on this basis:

1. Mr. Crosby stated that "Herkimer did not present as, or show any indications of, being an 'animal that represents a significant threat to public safety, [or] to the officer's safety,' However even if Herkimer had presented as an actual threat, according to all accounts and as confirmed by his bodyworn video, Grashorn completely failed to consider or use any alternative methods of control of Herkimer prior to shooting to kill Herkimer. … Grashorn went to lethal force immediately and deliberately ignored all non-lethal alternatives available." Mr. Crosby also stated that "Grashorn had no authorization, as required under this policy, from Supervisor or from Herkimer's owner to use deadly force to destroy Herkimer."

Mr. Crosby in this opinion excerpt and in his complete report states conclusions he reached in reliance on facts of the case. He lists those facts. Statements like "Grashorn completely failed to consider or use any alternative methods of control" prior to shooting is not speculative or unhelpful; quite to the contrary, it is a recitation of the very important fact *testified to by Grashorn himself at his deposition* that he never considered or used any alternative methods of control of Herkimer prior to shooting him, which lends considerable factual support to the conclusion that the shooting was unreasonable. A statement like "Grashorn had no authorization as required [under LPD policy]" to destroy the dog is another statement of pertinent fact based on the case's actual record facts that provides support for the conclusion that the shooting was unreasonable. There is nothing impermissible about this excerpt of Mr. Crosby's opinion, and certainly not on any basis related to providing an impermissible instruction of the law.

2. Mr. Crosby stated that "[a]s Grashorn approached the plaintiffs and their dogs, he made no effort at all to initiate or prepare for a less- or non-lethal encounter with either dog. This is a clear departure from best practices and from training that Grashorn allegedly received" from PoliceOne. Mr. Crosby stated that "Grashorn appears instead to have adopted an approach to dog encounters that was deliberately reactionary and harrowingly reliant on the use of lethal force." Mr. Crosby continued "[t]he failure of Grashorn to even attempt to adhere to recommended, reasonable, and responsible practices for contact with dogs was egregiously reckless and irresponsible, and led directly to the needless and cruel death of Herkimer."

This is, again, an excerpt of Mr. Crosby's opinion that applies his specialized training and experience to the facts of this case, facts of which include Grashorn testifying that he *never* utilized

10

non-lethal alternatives like a taser, baton, retreat, or OC spray in dog encounters, as well as Grashorn confirming in his on-scene comments to Plaintiffs after shooting their dog that he "don't take the chances" with non-lethal alternatives like those he was specifically trained to utilize prior to shooting a family's pet dog. Mr. Crosby's opinion is based on – among many things – his specialized training and experience and his review of this case and Grashorn's training. He is entitled to render an opinion on the needlessness of Herkimer's death so long as he provides his basis and reasoning for how he arrived at such an opinion. The jury will then be able to independently evaluate his opinion as an opinion and it will assist them in making their own independent determinations regarding the same.

3. Mr. Crosby stated that "Grashorn apparently had all of the information, training, and experience anyone could need to have avoided turning this into a fatal encounter for Hekrimer and a devastating tragedy for his owners. But it seems from what we see on Grashorn's video, his comments afterward on scene, and in his deposition testimony, however, that he just chose to ignore it." Mr. Crosby continued and stated that "[t]his was a deficient, reckless, and knowingly incorrect response by Grashorn to the presence of the dogs including Herkimer and contradicts Grashorn's own statements of how he should proceed when addressing a domestic dog."

4. Mr. Crosby stated that "Grashorn had no reasonable belief that the plaintiffs were about to or had committed any crime."

5. Mr. Crosby stated that "[t]he immediate use of deadly force by Grashorn was needless. Grashorn should have, as a reasonable and well-trained officer, recognized prior to shooting that the lack of a credible threat rising to the level of use of deadly force was not acceptable or reasonable action. Grashorn did indeed have multiple less-lethal options for preventing contact with the dog, yet recklessly and needlessly escalated the incident to the immediate deployment of deadly force."

6. Mr. Crosby stated that "Officer Grashorn deliberately firing the second shot at a dog that was no longer any threat to his safety was further unjustified and reckless. This action also directly contributed to the needless and cruel death of the dog Herkimer."

Defendant Grashorn claims that all of the above-listed classically "expert opinion" statements of expert opinion should be excluded merely for "touching upon an ultimate legal issue in the case." *Motion* [ECF 110], p. 11. This is not the law. In fact, expert opinions (presuming they are to be of any assistance to a jury) will *always* touch upon ultimate legal issues in a case. Particularly in a case such as this where the ultimate issue to be decided is whether the shooting of Herkimer was reasonable

under the circumstances. Indeed Defendant Grashorn's own expert Mr. Ijames proffers innumerable such mirroring opinions regarding his own opinions on the reasonableness of Grashorn's actions in his report. Such opinions only become impermissible when they usurp the jury's function entirely by purporting to opine as *to* the law that governs the case. Crosby's opinions applying his specialized knowledge, training, and expertise to the facts of this case to reach various conclusions, is standard expert opinion fare, and does no such impermissible thing.

**D. The portions of Crosby's report that Defendant claims to be "irrelevant" are very relevant.**

Defendant Grashorn next mischaracterizes several very relevant portions of Mr. Crosby's report in order to suggest that they are irrelevant. First, Grashorn suggests that because he "never met Plaintiffs or Herkimer" prior to shooting him, Mr. Crosby's opinion regarding his observations of Herkimer's behavior ("Herkimer's behavior was that of an affiliative nature, moving with a bouncy and excited manner consistent with an adolescent, sociable dog") should be excluded as irrelevant and "likely to confuse the jury." This is nonsensical. In a dog shooting case, "assessment of the behavior of the dog from various viewpoints will be helpful to the jury in determining the level of threat, if any, presented by the dog and the reasonableness of the actions of [the officer]." *Branson*, at *7.

Defendant Grashorn next asks that all statements and opinions from Mr. Crosby related to Officer Grashorn refusing to permit Plaintiffs to transport Herkimer to the veterinarian and causing a significant delay in his care to be excluded as irrelevant. Yet these facts are quite relevant to the reasonableness of the seizure. Indeed, <u>they are facts of the seizure itself</u>. Grashorn shot Plaintiffs' dog twice and when Herkimer did not die immediately, Grashorn persisted in maintaining complete control over the dog by refusing to let Plaintiffs remove it from the scene to obtain veterinary care. He seized the dog by shooting it and then kept it seized by refusing to let Plaintiffs move it. *See U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984) ("A 'seizure' of property occurs when there is some meaningful

interference with an individual's possessory interests in that property."). The ultimate issue at trial is whether this seizure (*all* of it) was a reasonable one. Defendant Grashorn's wish that such a determination be made by withholding from the jury the very facts of the very circumstances of that very seizure is a self-serving and utterly fanciful one.

Defendant Grashorn next contends that Mr. Crosby be prohibited from testifying as to "whether LPD failed to address any alleged deficits during their internal review of the shooting" and whether LPD has "recklessly and deliberately departed from the best practices and reasonable control of Officer Grashorn's use of force in this incident" because the municipal liability claims in this case have been dismissed. Plaintiffs happen to vociferously agree with this argument and hereby enthusiastically stipulate that so long as the municipal claims are dismissed in this case, LPD's subsequent approval of Grashorn's actions in shooting Herkimer is irrelevant. Plaintiffs agree that neither side should be permitted to mention LPD's subsequent internal review and approval of Grashorn's conduct in shooting Herkimer and asks that this stipulation be adopted as an order of the court.

Defendant Grashorn lastly contends in this section that Mr. Crosby be prohibited from testifying generally as to anything regarding "use of force" or "deadly use of force" because this lawsuit involves a claim of unreasonable seizure and not a claim of excessive use of force. Granting this request would effectively upend the ability of anyone to testify in this trial. Shooting a firearm is a use of force, and a deadly one. Under the law of this Circuit, in a dog shooting case, that is how an unreasonable seizure always tends to be effected - through the use of deadly force. That the ultimate legal claim is not phrased as one of excessive use of force is immaterial to the core relevance of this means of effecting the Fourth Amendment violation. Indeed every court in every § 1983 dog shooting case that Plaintiffs' counsel has read uniformly speaks about this Fourth Amendment violation in terms that include reference to the use of force. *See, e.g.*, *Branson*, at *6 ("The principles surrounding

13

the use of force by a police officer and the tactics and methods for evaluating and capturing a dog are matters of specialized knowledge rather than common knowledge and experience. The topics of this testimony fall within the ambit of Rule 702."); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) ("Both common sense, and indeed Wisconsin law, counsel that the use of deadly force against a household pet is reasonable only if the pet poses and immediate danger and the use of force is unavoidable."); *Brown v. Muhlenberg Tp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("Indeed, the Township's policy manual spells out the progressive use of force policy relating to animals that is inconsistent with Officer Eberly's conduct."); *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 978 (9th Cir. 2005) ("Other than the officers' interest in preserving evidence, the officers were not presented with exigent circumstances that necessitated killing the dogs. Accordingly, the failure to develop any realistic non-lethal [force] plan for dealing with the dogs is simply not the type of reasonable mistake in judgment to which a court should give deference."); *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) ("A seizure of property occurs when there is some meaningful interference with a person's possessory interests in that property. The question before us is whether this seizure was reasonable under the circumstances. The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer." (quotations and citations omitted)). When the question is whether a seizure was "reasonable," the types of force employed in effecting the seizure are naturally not just relevant but indeed some of the most important and material operative facts. In any event, Defendant Grashorn advances no reasoning or law in support of this disingenuous argument and so Plaintiffs will not expend further time attempting to respond to it here.

**E. Discussion of what training/policy/procedure(s) Grashorn violated in shooting Herkimer is relevant to the determination of the shooting's reasonableness.**

Defendant Grashorn next argues that, pursuant to the court's reasoning in the case of *Erickson v. City of Lakewood*, 2021 WL 4438035 (D. Colo. Sept. 27, 2021), all portions of expert reports referencing compliance with police department policies and procedures should be excluded as irrelevant. *Motion* [ECF 110], p. 14. It is worth mentioning that the *Erickson* case was an excessive force case involving a plaintiff who sued the police officers who had deliberately "sicced" their K9 police dog on him for the purpose of biting and harming him, and it was actually the Plaintiff who asked the Court to prohibit the Defendants' expert from testifying to an opinion that Defendants had complied with the agency's policies regarding such a use of force. *Id.* The reasoning there was that compliance with a policy "is not relevant to whether [the officer] acted with excessive force under the Fourth Amendment." *Id.* at *8.

The situation here, involving expert testimony that Officer Grashorn shot Herkimer *in violation of LPD policy*, is distinguishable in a number of ways. The most obvious being that Grashorn's knowledge of LPD policy regarding non-lethal use of force and dog encounters and his violation of that policy is directly relevant to willfulness in committing the constitutional violation and bears directly on punitive damages. *Compare U.S. v. Rodella*, 2014 WL 6634391 at *14 (D. N. Mex. Nov. 20, 2014) ("If it is shown that Rodella received training on how to properly perform a high-speed pursuit and it is shown that Rodella disregarded this training, then this information is relevant to whether Rodella willfully violated Tafoya's constitutional rights. The training materials are probative to whether Rodella acted in open defiance or reckless disregard of Tafoya's constitutional rights.").

Grashorn's request to exclude expert testimony regarding his violation of LPD policy also may be unenforceable. The LPD policy largely mimics and sets forth nearly identical language to that contained in both the Colorado Dog Protection Act and the training materials Grashorn received

15

related to these subjects. "The training materials are relevant to whether [Grashorn] acted willfully and whether he acted reasonably." *Id.* at *14 ("Training materials may be used to show whether [the officer] acted reasonably."). "The Tenth Circuit has held that the reasonableness of an officer's conduct must be judged in light of the officer's training." *Id.* (citing *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008). If the principles and standards of care for use of force in dog encounters set forth in Grashorn's training are the same as those set forth in the LPD policy regarding the same subject, the effort to prevent expert testimony regarding the violation of one while prohibiting it as to the violation of the other will serve no purpose except to burden the Court and confuse the jury.

**F. Mr. Crosby does not need to have personal experience tasing someone in order to testify that tasing a dog is an established, accepted, and preferred non-lethal alternative to fatally shooting a pet dog as a matter of police practice and training.**

Defendant Grashorn lastly argues that Mr. Crosby should be prohibited from testifying at trial that a Taser is an accepted and promoted non-lethal alternative to shooting a dog. As grounds for this prohibition, Grashorn suggests that Mr. Crosby would need to have been certified in Taser use and employed a Taser personally on people/pets in order to possess the "specialized knowledge" required to discuss its use as an accepted non-lethal alternative to shooting a dog generally.

This contention again misses the mark. Mr. Crosby has been endorsed as, *inter alia*, an expert in police practices, use of force, and training both generally and with respect to dogs specifically. He has 22 years of experience in law enforcement along with abundant specialized training and experience in the arena of training law enforcement regarding best practices for identifying and safely handling aggressive dogs, including but not limited to authoring with the US Department of Justice the national standards for the same. Just like he does not need to have sprayed a dog with pepper spray in order to opine that pepper spray is an established, effective, and broadly taught non-lethal alternative to fatally shooting a dog, he does not need to have tased a dog (or ever touched a taser) to testify that a taser is an established, effective, and broadly taught non-lethal alternative to fatally

shooting a dog. So long as he has training or experience that supply a reliable basis for offering such an opinion, the opinion is admissible. And this alone from Mr. Crosby's deposition would provide it:

> 11  Q.  Okay.  Are tasers generally effective on
> 12  dogs?
> 13  A.  Absolutely.
> 14  Q.  Have you ever --
> 15  A.  In fact, the National Animal Control
> 16  Association recommends tasers strongly as a defensive
> 17  measure against dogs.
> 18  Q.  And what's your understanding of how the
> 19  deployment of a taser -- not a drive stun, but the
> 20  firing of a taser works?
> 21  A.  The taser discharges two darts, one
> 22  carried above the other, and the two darts spread -- I
> 23  believe Grashorn mentioned that it's 1 foot for every
> 24  8 feet, but recognizing that to use against a dog a
> 25  taser -- in fact, the taser company even explains that
>
> Page 151
> 1  you turn the taser on the side so that you get the
> 2  spread of the two darts left to right instead of up
> 3  and down.  Extremely effective.  I've got video and
> 4  also personal experience in seeing animals, dogs and
> 5  others, flee immediately from getting the pulse from
> 6  the taser.
> 7  Q.  Okay.  But you've never fired a taser at
> 8  a dog?
> 9  A.  No.  I've never fired a taser at a dog,
> 10  but I was standing next to a police officer who fired
> 11  the taser at a different wild pig that was charging
> 12  us.  And 200-pounds plus of wild boar levitated in the
> 13  air and turned around and ran, hit the water, and
> 14  continued swimming faster than I've ever seen a pig
> 15  move in my life.
> 16  Q.  But it's fair to say you need to hit both
> 17  prongs for a taser to be effective?
> 18  A.  Yes, you do, just like with a person.
> 19  Q.  All right.  And we already talked that OC
> 20  spray is very effective; correct?
> 21  A.  Yes, it's very effective, which has also
> 22  been proven by studies, including the Baltimore Police
> 23  Department.

17

*Deposition of James Crosby*, Ex. 1, p. 150-51. So long as Mr. Crosby has specialized education, training, and experience that provide a reliable factual basis upon which he may render an opinion regarding the existence of viable and well-established non-lethal alternatives to fatally shooting a dog, his testimony regarding the same is admissible. *See Branson v. Price,* No. 13-CV-3090-REB-NYW, 2015 WL 5608120, at *3 (D. Colo. Sept. 24, 2015) ("The principles surrounding use of force by a police officer and the tactics and methods for evaluating and capturing a dog are matters of specialized knowledge rather than common knowledge and experience. The topics of testimony fall within the ambit of Rule 702.").

**G. Grashorn has taken aim at over a dozen statements and opinions of Mr. Crosby's that have already been expressly approved of as relevant and proper under FRE 702 in another recent dog shooting case before this court.**

In *Branson v. Price*, the defendant officers made many of the same arguments about Mr. Crosby that Officer Grashorn attempts anew here. They were unsuccessful. A copy of the Court's ruling in that case (authored by Hon. Judge Blackburn) is attached to this pleading for reference, with the key section on pages 9-10 listing each individual opinion/statement of Mr. Crosby's that the defendants challenged (11 of them) and how each of the 11 was quickly and easily deemed relevant and not subject to exclusion under Rule 702.

**CONCLUSION**

Defendant Grashorn's scattershot Rule 702 motion to strike the testimony of Plaintiffs' well-qualified expert should fail. This is not a complicated case and Plaintiffs' proffered expert opinions are reliable and admissible on their face. For these reasons, a *Daubert* hearing is unnecessary to determine the admissibility of Plaintiffs' expert's testimony. Plaintiffs respectfully request that this court deny Defendant Grashorn's motion and provide any other such relief deemed just and proper.

Lastly, to the extent that the Court does adopt any legal conclusions deeming inadmissible any portions of Mr. Crosby's report, Plaintiffs simply request that those rulings be stated in clear and

unequivocal terms to enable easy and equal application to all such similarly offending portions of the opinions, testimony, and multiple reports spanning over 30 pages from Defendant Grashorn's own expert Mr. Ijames, as Mr. Ijames's reports are replete with exactly the same types of statements and opinions that Defendant Grashorn complains of here.

Respectfully submitted this 26th day of May, 2023.

THE LIFE & LIBERTY LAW OFFICE

*/s/ Sarah Schielke*
Sarah Schielke
The Life & Liberty Law Office LLC
1209 Cleveland Avenue
Loveland, CO 80537
P: (970) 493-1980
F: (970) 797-4008
E: sarah@lifeandlibertylaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that on May 26, 2023, a true and accurate copy of the foregoing has been sent to the following parties via PACER/ECF:

Jonathan Abramson, Esq.
Yulia Nikolaevskaya, Esq.
Kissinger & Fellman, P.C.
3773 Cherry Creek North Drive, Suite 900
Denver, CO 80209
Email: jonathan@kandf.com
julie@kandf.com
*Attorneys for Defendant Grashorn*

*/s/ Sarah Schielke*