**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-03090-REB-NYW

GARY BRANSON,

    Plaintiff,
v.

COMMERCE CITY POLICE OFFICER ROBERT PRICE, in his official and individual capacity,

    Defendant.

---

**ORDER CONCERNING MOTION TO DETERMINE
ADMISSIBILITY OF EXPERT TESTIMONY**

---

**Blackburn, J.**

    This matter is before me on the **Defendant's Motion To Determine Admissibility of Plaintiff's Proffered Expert Testimony** [#83][1] filed January 12, 2015. The plaintiff filed a response [#87], and the defendant filed a reply [#93]. I grant the motion in part and deny it in par.

### I. BACKGROUND

    On November 24, 2012, 911 received a call about a dog at-large. Arica Bores, a Community Services Officer (CSO) with Commerce City, Colorado responded to the 911 call at around 11:23 a.m., and located the dog. CSO Bores followed the dog in her animal control vehicle to a residence where the dog retreated into a garage with an open garage door. At the residence, CSO Bores was joined by Commerce City Police

---

[1] "[#83]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

Officers Christopher Castillo and Robert Price, the defendant. The officers did not know if the owner of the dog lived in the house, and there was no indication that the owner of the dog was present or nearby.

The three officers formulated a plan to take the dog into custody because they did not know to whom the dog belonged, and they believed the dog was being aggressive toward the public. Officers Bores and Castillo planned to use catch poles,[2] and Officer Price intended to use his Taser to gain control of the dog. A neighbor recorded a video of the efforts of the officers to capture the dog.

As two officer approached the dog with catch poles, the dog tried to escape from the garage and started to end run the Officers. At this time, Officer Price testified that he believed the dog was charging the officers and acting extremely aggressively. Contrastingly, according to Officer Castillo, the dog did not charge Officer Price. According to other witnesses, the dog was not acting aggressively and did not charge the officers. From the video, it appears that the dog, who can be seen running for the open garage door and away from the officers, was attempting to escape, not attack.

While the dog was running to escape from the garage through the open garage door and away from the officers, CSO Bores, with the other two officers behind her and the dog, snared the head of the dog in a catch pole. Almost immediately, with the dog just barely outside the garage and still running away from the officers, Officer Price fired the first of five shots at the dog. In response, the dog, who by then was just outside the

---

[2] A catch pole is a pole with a loop or snare at one end. The loop can be placed over the head of a dog and tightened, which gives the person holding the catch pole a high degree of control over the ensnared dog.

garage on the driveway, moved in an arcing counterclockwise direction away from CSO Bores and the other two officers, who were still positioned behind her and the dog.[3]

Shortly after the dog was snared in the catch pole and was outside on the driveway, Officer Price moved toward the dog, who, although facing the officers, was backing away from them, and at a range of less than ten feet fired a second time. However, the dog did not go down. With the catch pole still around the neck of the dog, Officer Price fired at the dog, as it faced him, three more times at close range and in rapid succession until the dog lay lifeless on the driveway.

The plaintiff, Gary Branson, was the owner of the dog. In his complaint [#9], Mr. Branson claims Officer Price acted unreasonably when he shot the dog, in violation of the Fourth Amendment rights of Mr. Branson. In his Rule 702 motion, Officer Price challenges three exert witnesses endorsed by the Mr. Branson. Those witnesses are Jonathan Priest, James Crosby, and Sean Miller. Officer Price does not challenge the qualifications of these witnesses. Rather, he challenges their opinion testimony on other bases.

## II. STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of

---

[3] This reaction is typical of a dog caught in a catch pole, who often will helicopter or thrash and spin in panic. Here, the dog did what was expected. The dog tried desperately to escape the catch pole and the officers.

3

> fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

**FED. R. EVID.** 702. The Supreme Court has described the court's role in weighing expert opinions against these standards as that of a "gatekeeper." ***See Kumho Tire Company, Ltd. v. Carmichael***, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 142 L.Ed.2d 248 (1999).

As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 589-92, 113 S.Ct. 2786, 2795-96, 125 L.Ed.2d 469 (1993); ***Truck Insurance Exchange v. MagneTek, Inc.***, 360 F.3d 1206, 1210 (10th Cir. 2004). The Tenth Circuit employs a two-step analysis when considering the admissibility of expert testimony under Rule 702. ***See 103 Investors I, L.P. v. Square D Co.***, 470 F.3d 985, 990 (10th Cir.2006). Plaintiff's motion to exclude the testimony of Mr. Hall implicates only the first, codified in Rule 702(a), which examines, *inter alia*, whether the expert's testimony "will help the trier of fact to understand the evidence or determine a fact in issue." **FED. R. EVID.** 702(a). This inquiry "goes primarily to relevance," ***Daubert***, 113 S.Ct. at 2795, but the court may consider additional factors, such as whether the testimony goes to a matter within the common knowledge and experience of jurors, or whether it usurps the jury's role in determining an ultimate issue of fact or the court's role to instruct the jury on the law,

*see United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir.), *cert. denied*, 127 S.Ct. 420 (2006).

The trial court has broad discretion in determining whether expert testimony is sufficiently relevant to be admissible. *See Truck Insurance Exchange*, 360 F.3d at 1210; *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000). The overarching purpose of the court's inquiry is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Goebel v. Denver and Rio Grand Western Railroad Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Kumho Tire*, 119 S.Ct. at 1176). However, Rule 702 is properly construed as a rule of inclusion rather than one of exclusion, and "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, Advisory Committee Note. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 113 S.Ct. at 2798.

### III. ANALYSIS

#### A. Jonathan Priest

Mr. Branson has endorsed Jonathan Priest as an expert witness. Mr. Priest says he was asked to conduct a physical evidence analysis and incident reconstruction. Then, he was asked to "compare and contrast conclusions from this analysis to existing best practices of law enforcement officer use of force incidents." *Motion* [#83], Exhibit B (Priest Report) [#83-2], pp. 1, 12. Mr. Priest opines that the plan of the officers to

capture the dog "appeared ill conceived," and he gives opinions about what should have been done instead. *Priest Report* [#83-2], pp. 13 - 14. In an addendum to his report, Mr. Priest gives opinions about whether the dog showed threatening behavior. *Motion* [#83], Exhibit C (Priest Supplemental Report), p. 6. He opines:

> After review of the video, I observed no threatening behavior of the animal for any of the firearm discharges. The primary actions of the animal were those indicating retreat or attempts to flee. The first shot occurred with the animal running from the garage and prior to full control of the snare line. The final four shots occurred while the animal was pulling away from Officer Price.
>
> Viewing the totality of the video and the shooting event specifically, I observed no actions on the part of the animal that would indicate threatening behavior supporting the use of deadly physical force. Officer Price furthermore pursued the animal after a brief pause between the first and second discharges, firing on an animal that was obviously retreating and attempting to flee.

*Id.*, p. 6

Officer Price contends these opinions are not admissible under Fed. R. Evid. 702 "because the jury needs no help in deciding whether [Officer] Price acted reasonably." *Motion* [#83], p. 8. I disagree. The principles surrounding use of force by a police officer and the tactics and methods for evaluating and capturing a dog are matters of specialized knowledge rather than common knowledge and experience. The topics of this testimony fall within the ambit of Rule 702.

Depending on the relevant circumstances, assessment of the behavior of a dog for aggressiveness or threat could fall within common knowledge and experience or specialized knowledge. Here, if the opinion testimony of Mr. Priest is based on common knowledge and experience, then it is admissible under Rule 701 because it is rationally based on his perception, primarily his review of the video. If his opinion testimony is

based on specialized knowledge, then it is admissible under Rule 702.  In either case, assessment of the behavior of the dog from various viewpoints will be helpful to the jury in determining the level of threat, if any, presented by the dog and the reasonableness of the actions of Officer Price.

In addition, Officer Price argues these opinions are inadmissible because they "constitute conclusory condemnations of Price's actions which opinions essentially tell the jury what result to reach, rendering them inadmissible."  Rule 704(a) provides "(a)n opinion is not objectionable just because it embraces an ultimate issue."  The exception of Rule 704(b), applicable only in criminal cases, does not apply in this civil case.  An opinion on the reasonableness of the actions of Officer Price is not inadmissible simply because it addresses a key issue in this case.

Mr. Priest was asked to "(f)orensically determine the veracity of the report made by Officer Robert Price when compared to the physical evidence observed and recovered from the scene."  Addressing the reports of the three officers on the scene of the shooting, Mr. Priest opines:

> (T)he information reported by these three individuals presents a significant deviation from the known evidence and typical distorted recall. Additionally, the similarities in their altered perspectives suggest that at some point after the shooting event, these individuals discussed the incident in some manner wittingly or unwittingly.

*Priest Report* [#83-2], p. 16.  In the Rule 702 motion, Officer Price describes this opinion as a credibility determination by Mr. Priest and contends such determinations are within the exclusive province of the jury.  "The credibility of witness testimony is a matter left to the jury and generally is not an appropriate subject for expert testimony." **Wilson v. Muckala**, 303 F.3d 1207, 1218 (10th Cir. 2002).  Based on his review of the evidence

7

surrounding the shooting, Mr. Priest may express an opinion about whether a specific witness statement about the shooting is consistent or inconsistent with the other evidence. He may not, however, opine directly that any witness is credible or not credible.

Officer Price contends the opinions of Mr. Priest "are not based on any reliable methodology or published standard," but he does not provide any further support for this contention. *Motion* [#83], p. 8. As outlined in the response of Mr. Branson, Mr. Priest has extensive experience in law enforcement and conducted a careful review of the evidence concerning the shooting at issue in this case. *Response* [#87], p. 8. His personal knowledge and experience combined with his review of the relevant facts and data provide, at least facially, a sufficiently reliable basis for his opinions. All else is for cross examination.

In his reply [#93] in support of his motion, Officer Price raises some new issues improperly. Although I need not address issues first raised in a reply, I must address one such new issue. In his deposition, Mr. Priest was asked: "Wouldn't you agree that other individuals with background and training in law enforcement could have an opinion that is different than yours?" *Reply* [#93], Exh. H, 60:19-22. Mr. Priest responded: "I would absolutely agree with that." *Id.*, Exh. H, 60:23. Based on this exchange, Officer Price argues: "The foregoing demonstrates that these are simply Mr. Priest's opinions, and given that another expert in this area could reach another conclusion, his opinions are not helpful to the trier of fact." *Reply* [#93], p. 3. This argument is baseless. It is routine for expert witnesses addressing the same issue to provide contrary opinions on that issue. The fact of a disagreement between experts does not render their opinions

inadmissible *ipso facto*.

The motion to exclude the opinion testimony of Mr. Priest is denied, except to the extent Mr. Priest may seek to testify directly that a particular witness is credible or not credible. Such direct testimony about the credibility of a witness is excluded.

### B. James Crosby

Mr. Branson has endorsed James Crosby as an expert witness. Officer Price challenges opinions of Mr. Crosby about the veracity of the police reports, his opinions about whether the dog acted aggressively, and his opinions about the reasonableness of the actions of the officers on the scene. The report of Mr. Crosby is attached to the motion. *Motion* [#83], Exhibit D [#83-4] (Crosby Report). Officer Price adopts the arguments asserted as to Mr. Priest and applies them to Mr. Crosby. Generally, those arguments fail for the reasons discussed as to Mr. Priest. There is no indication in the motion that Mr. Crosby seeks to express opinions about the credibility of other witnesses.

In his response [#87], Mr. Branson provides a table of the opinions of Mr. Crosby which appear to be challenged by Officer Price. That table is shown below. The opinions refer to the dog by her name, Chloe.

| *Opinion* | *Fact in Issue* |
|---|---|
| 1) That the physical and documentary evidence does not support the conclusion that Chloe attacked the officers; Officer Bores never lost control of the catchpole throughout the encounter. (*Crosby Report,* p. 10). | Whether Chloe attacked the officers; Whether the officers had non-lethal means available to capture Chloe. |

| | |
|---|---|
| 2) That Chloe's behavior in the video is not consistent with a vicious, aggressive dog. (*Id.*) | Whether Chloe was aggressive on November 24, 2012 |
| 3) That Chloe's behavior was not dangerous and that she did not charge Defendant Price. (*Id.*) | Whether Chloe was aggressive and threatening on November 24, 2012 |
| 4) That Defendant Price's use of Taser on Chloe did not comport with national animal control standards. (*Id.*) | Whether Defendant Price's actions on November 24, 2012 conformed to generally accepted national standards |
| 5) That Chloe's behavior and movements on November 24, 2012 never presented a clear threat to the officers. (*Id.*) | Whether Chloe was aggressive and threatening on November 24, 2012 |
| 6) That the officers" had other, non-lethal available means to control Chloe on November 24, 2012, to include closing her in the garage and/or tranquilizing her. (*Id.*) | Whether the officers" actions conformed to generally accepted standards of animal control |
| 7) That the officers' tactics in cornering Chloe is a practice described as unjustified by other police departments across the country. (*Id.*) | Whether the officers' conduct on November 24, 2012 conformed to generally accepted law enforcement standards |
| 8) That a reasonably well-trained police or animal control officer would have recognized Chloe's behavior as normal, predictable, and consistent under the circumstances. (*Id.* at 10-11). | Whether the officers' conduct on November 24, 2012 conformed to generally accepted law enforcement and animal control standards |

| | |
|---|---|
| 9) That deadly force is not justified when a dog is caught on a catchpole. (*Id.* at 11). | Whether the officers" conduct on November 24, 2012 conformed to generally accepted law enforcement and animal control standards. |
| 10) That, under the circumstances, Defendant Price's use of his firearm was unreasonable and unjustified (*Id.*) | Whether the officers" conduct on November 24, 2012 was justified under the circumstances. |
| 11) That Defendant Price"s actions endangered the public. (*Id.*) | Whether the officers" conduct on November 24, 2012 was justified and reasonable under the circumstances. |

These opinions are not subject to exclusion under Rule 702 based on the arguments made as to the opinions of Mr. Priest. In his reply [#93], Officer Price notes that Mr. Crosby admits that he cannot always see the dog clearly in the video of the incident. In light of the evidence reviewed by Mr. Crosby, as described in his report, this arguable flaw in the data available to Mr. Crosby does not render his opinion inadmissible. Such flaws go to the weight of the expert opinion testimony, not its admissibility.

### C. Sean Miller

Mr. Branson has endorsed Sean Miller as an expert witness. Officer Price challenges opinions of Mr. Miller concerning "the dog's purported fear during the incident and what the dog's intent was when it ran from the back of the garage." *Motion*[#83], p. 9. Mr. Miller says he is a canine behaviorist. Officer Price argues the opinions of Mr. Miller are not admissible because they tell the jury what result to reach and are not based on any reliable method or published standard. In addition, Officer Price again argues that whether the dog was acting aggressively and whether the

actions of Officer Price were reasonable are decisions reserved for the jury and are not properly the subject of expert testimony.

Again, under Rule 704(a), expert opinion testimony "is not objectionable just because it embraces an ultimate issue." Mr. Miller has specialized knowledge and experience sufficient to qualify him to provide expert opinion testimony about dog behavior. Officer Price does not challenge those qualifications. Mr. Miller reviewed the video of the incident in question here and assessed the behavior of the dog based on what he can see in the video. For the purpose of this opinion testimony, that is a sufficiently reliable method to form a basis for opinion testimony about the behavior of the dog. As with Mr. Priest, the assessment of Mr. Miller about the fear and intent exhibited by the dog may straddle the line between lay opinion and expert opinion testimony. In either case, assessment of the behavior of the dog from various viewpoints will be helpful to the jury in determining the level of threat, if any, presented by the dog and the reasonableness of the actions of Officer Price.

In the end, of course, whether the dog was acting aggressively and whether the actions of Officer Price were reasonable will be jury determinations. In making those determinations, however, nothing in the rules concerning lay opinion and expert opinion testimony prohibits the admission of such testimony to aid the jury. All other criticisms of Mr. Miller raised by Officer Price, particularly in his reply[#93], implicate weight, not admissibility, a circumstance inviting cross examination.

### III. CONCLUSION & ORDERS

To the extent Mr. Priest may seek to opine directly that any witness is credible or not credible, his opinion testimony must be excluded. However, Mr. Priest may express

an opinion about whether a specific witness statement about the shooting is consistent with Mr. Priest's review of the evidence.  Otherwise, Officer Price has not raised any valid basis to exclude the opinion testimony of Mr. Priest, Mr. Crosby, or Mr. Miller.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendant's Motion To Determine Admissibility of Plaintiff's Proffered Expert Testimony** [#83] filed January 12, 2015, is granted to the extent witness Jonathan Priest may seek to deliver opinion testimony stating directly that any witness is credible or not credible; and

2.  That otherwise, the **Defendant's Motion To Determine Admissibility of Plaintiff's Proffered Expert Testimony** [#83] filed January 12, 2015, is denied.

Dated September 24, 2015, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge