IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 21-cv-02502-RM-KLM

WENDY LOVE, and
JAY HAMM,

    Plaintiffs,

v.

MATHEW GRASHORN,

    Defendant.

---

## ORDER

---

This action brought under 42 U.S.C. § 1983 arises out of Defendant's shooting of Plaintiffs' dog. It is before the Court on Defendant's Motion for Summary Judgment (ECF No. 101), asserting that Defendant is entitled to qualified immunity. The Motion has been fully briefed. (ECF Nos. 117, 133.) Defendant has also filed a Motion to Exclude (ECF No. 110), seeking to exclude certain testimony of Plaintiff's expert witness, James W. Crosby. That Motion has been briefed as well. (ECF Nos. 125, 135.) Both Motions are granted in part but otherwise denied for the reasons below.

**I.    BACKGROUND**

In June 2019, Defendant was on duty as a patrol officer with the Loveland Police Department. (ECF No. 134, ¶ 1.) On the day of the shooting, a Loveland property owner called the police because, via video surveillance, he observed people and a truck in the parking lot of his business. (*Id.* at ¶¶ 5, 7.) The caller reported that no one should be on the property on

weekends and requested that a unit stop by. (*Id.* at ¶¶ 5, 8.) Defendant and another officer were dispatched to the location; Defendant arrived first in his patrol vehicle. (*Id.* at ¶ 11.)

Subsequent events occurred in a matter of seconds and are observable from Defendant's "body cam" footage. Defendant parked several yards away from Plaintiffs' truck and exited his vehicle. A large dog ("Bubba") that had been lying on the ground got up and began running toward him. Defendant withdrew his firearm and pointed it at Bubba. Plaintiff Hamm called off Bubba, who turned around. (*Id.* at ¶ 30.) Meanwhile, another dog ("Herkimer"), resembling a pit bull, emerged from Plaintiffs' truck. It ran first toward Bubba and then in Defendant's direction. Once he was a few feet away from Defendant, Defendant shot him twice. While Herkimer lay on the ground, Plaintiff Love began walking toward him. Defendant initially ordered Plaintiffs to get back to the truck but then allowed Plaintiff Love to console the wounded dog.

Several other officers soon arrived at the scene. About ten minutes after the shooting, Plaintiffs were allowed to take Herkimer to the vet, although they asked for permission to do so sooner. Herkimer was later euthanized.

Plaintiffs filed their initial complaint in state court, asserting claims against Defendant and three other officers. After the case was removed to this Court, the claims against the other officers were dismissed, leaving only Plaintiffs' claims against Defendant for unlawful seizure under Colorado and federal law. (*See* ECF No. 90.) The case has proceeded through discovery and is set for a five-day jury trial in November 2024.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material." *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

### B. Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Gutteridge*, 878 F.3d at 1238; *Estate of*

3

*Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotation omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the burden of the movant for summary judgment—showing that there are no genuine issues of material fact that he or she is entitled to judgment as a matter of law." *Gutteridge*, 878 F.3d at 1238 (quotation omitted).

### C.   Expert Testimony

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court has the duty to act as a gatekeeper by ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

If the Court determines that an expert is sufficiently qualified to render an opinion, it must then determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology. *See Nacchio*, 555 F.3d at 1241. In doing so, the Court considers

(1) whether the testimony is based on sufficient facts or data; (2) whether it is the product of reliable principles and methods; and (3) whether the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702(b)-(d).

If the evidence is sufficiently reliable, the Court then evaluates whether the proposed evidence or testimony is sufficiently relevant that it will assist the jury in understanding the evidence or determining a fact at issue. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005). But even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court has discretion in how it performs its gatekeeper function. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

### III.   ANALYSIS

#### A.   Summary Judgment Motion

##### 1.   Federal Claim

It is clearly established in this Circuit that a police officer's shooting of a pet dog is a "seizure" under the Fourth Amendment. *Mayfield v. Bethards*, 826 F.3d 1252, 1258-59 (10th Cir. 2016); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3rd Cir. 2001). Whether the seizure here violated Plaintiffs' constitutional rights depends on whether it was reasonable under the circumstances. *See Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006); *see also Branson v. Price,* No. 13-cv-03090-REB-NYW, 2015 WL 5562174, at *7 (D. Colo. Sept. 21, 2015) (unpublished) ("[T]he robust consensus of persuasive authority from other courts of appeal demonstrates that the defendant had fair notice, even in this novel factual circumstance, that using deadly force against a dog was unlawful when the dog did not present an imminent

5

threat to law enforcement or the public."). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer." *Andrews*, 454 F.3d at 918 (citing *Graham v. Conner*, 490 U.S. 386, 396-97 (1989)). To defeat Defendant's claim of qualified immunity, Plaintiffs must show that a reasonable officer with the information Defendant had at the time of the shooting would have believed his conduct was lawful under clearly established law. *See Brown*, 269 F.3d at 211.

Factors courts consider in analyzing whether a seizure of a dog is reasonable under the totality of the circumstances include the following:

> (1) Whether the dog was "at-large" or whether the owner was available and willing to assert control over the dog.
>
> (2) The breed of the dog.
>
> (3) Whether there was time to find an alternative solution to gain control of the dog.
>
> (4) Whether non-lethal means were available to control the dog.
>
> (5) Whether the dog posed a danger to the officer or the public.

*Branson*, 2015 WL 5562174, at *5 (citations omitted).

Considering these factors and viewing the evidence—including the video footage—in the light most favorable to Plaintiffs, the Court finds there are genuine issues of material fact concerning whether Defendant's actions were reasonable. First, a reasonable fact finder could conclude that Herkimer was not "at-large" when Defendant shot him. Although he was unleashed on private property, his owners were present, and they had already successfully called off one of their other dogs. It is impossible to know what Herkimer would have done had he not been shot, but the circumstances do not conclusively establish that he was "at-large." Therefore, this factor weighs in Plaintiffs' favor.

Second, Herkimer looked like a pit bull, a breed that is widely perceived as unpredictable and dangerous. This factor weighs in Defendant's favor, but it is not dispositive. *See id.* at *6 ("Even though [the officer] reasonably perceived the dog to be a dangerous breed, that fact alone does not justify a seizure in the form of shooting the dog.").

The third and fourth factors do not weigh heavily in either side's favor. Although the situation evolved rapidly, the circumstances do not conclusively establish that a reasonable officer in Defendant's position could not have used non-lethal means available to avoid whatever danger the approaching dog posed. At the very least, it is debatable whether Defendant had enough time to respond differently. Thus, these factors weigh slightly in Plaintiffs' favor.

The Court finds that the fifth factor is the most critical in assessing the reasonableness of Defendant's conduct here. "Incidents involving a dog that has not actually attacked a person are closer cases and can demonstrate that the deadly force was unreasonable." *Branson*, 2015 WL 5562174, at *5 (quotation omitted). Although a reasonable jury could decide that Herkimer posed a danger to Defendant demonstrating the type of "tense, rapidly evolving situation where allowance is given for the police to make split-second decisions," it could also decide that he did not pose an immediate danger. *Id.* at *6. Because there is sufficient evidence of the latter, this factor weighs in Plaintiffs' favor at this stage. On balance, a reasonable jury could conclude that Defendant's conduct was unreasonable, and therefore the Court finds he is not entitled to qualified immunity.

    2.    <u>State Claim</u>

According to the operative Complaint (ECF No. 31), Plaintiffs' state unlawful seizure claim is premised on Colo. Rev. Stat. § 13-21-131 and mirrors their federal unlawful seizure claim with respect to Defendant. In his Motion, Defendant argues that the statute was not yet in

7

effect when the shooting occurred and that there is no evidence of legislative intent to overcome the presumption that statutes operate prospectively. (*See* ECF No. 101 at 16-19.) In their Response, Plaintiffs do not address, much less refute, Defendant's position. Thus, the Court finds they have abandoned this claim. In the alternative, the Court further finds there is no indication that § 13-21-131 was intended to apply retroactively, and therefore Plaintiffs' reliance on it here is inapposite. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' state claim.

### B. Motion to Exclude

In his Motion to Exclude, Defendant asserts that the Court should exclude certain opinion testimony by Plaintiffs' retained expert, James W. Crosby, who is endorsed as an expert in police training, police practices, police use of force, and canine behavior. Defendant contends that various opinions of Mr. Crosby should be excluded because they usurp the function of the jury in deciding the facts, opine as to the credibility of Defendant's position and testimony, state legal conclusions, and are irrelevant. He further contends that Mr. Crosby lacks specialized knowledge or training in taser use and therefore should not be permitted to opine on this topic. Defendant objects to dozens of excerpts from Mr. Crosby's report. Rather than address each of them individually, the Court will endeavor to highlight illustrative examples that demonstrate how the Court intends to allow—but cabin—Mr. Crosby's testimony at trial.

First, the report states that Plaintiffs were acting in a "peaceful and lawful manner" when Defendant arrived at the parking lot, even though they were trespassing on private property and two of their dogs were unleashed. Equally problematic is that Mr. Crosby has no personal knowledge about what Plaintiffs were doing that day before Defendant arrived. Further, his statements on this topic do not seem to implicate his specialized knowledge about police

8

practices or canine behavior. Accordingly, the Court will exclude any statements by Mr. Crosby about events that occurred before Defendant arrived at the parking lot or the legality of, or reasons for, Plaintiffs' presence there.

Second, the report states that Defendant "shot and killed" Herkimer. Although the shooting is not disputed, the record reflects that Herkimer was subsequently euthanized. Mr. Crosby has not shown that he has any pertinent qualifications that would allow him to opine as to the cause of Herkimer's death, and the Court finds that the probative value of his statements about Defendant killing Herkimer is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Accordingly, these statements are properly excluded.

Third, the reports states that Defendant did "not attempt to secure or deploy any less-lethal means of deterrent" before withdrawing his firearm. The report makes similar statements about Defendant's state of mind during the episode and about things he did or did not consider or decide. For example, Mr. Crosby asserts that "it was improper and incorrect for [Defendant] to claim that he perceived Herkimer as 'aggressive.'" (ECF No. 118-2 at 13.) But aside from the problem that Mr. Crosby can only surmise Defendant's thought process during this episode, the relevant question here is what a reasonable officer would have done in this situation, and Defendant's subjective beliefs are not relevant to the inquiry of whether his conduct violated Plaintiffs' constitutional rights. *See Andrews*, 454 F.3d at 918. Thus, Mr. Crosby may offer his opinions about what a reasonable officer would have perceived and how a reasonable officer might have reacted under these circumstances, but he may not state his opinions on what Defendant was or was not thinking at the time. This includes any statements by Mr. Crosby about the "approach" Defendant appears to have adopted with respect to dog encounters generally and what Defendant may have believed Plaintiffs were up to when he arrived. (*Id.*) In

9

addition to the relevance concerns the Court has about such statements, they are objectionable because they would encroach on the jury's duty to assess the credibility of witnesses and because they state or come very close to stating legal conclusions that are at the heart of this case. "Expert testimony crosses the line between the permissible and impermissible when it 'attempts to define the legal parameters within which the jury must exercise its fact-finding function.'" *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1285 (W.D. Okla. 2018) (quoting *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000)).  Accordingly, Mr. Crosby can testify to facts from which the jury can infer Defendant's motive, intent, or state of mind, but he cannot testify directly as to Defendant's motive, intent, or state of mind.  *See Liberty Mut. Fire Ins. Co. v. Michael Baker Int'l, Inc.*, No. 19-cv-881-JNP, 2022 WL 973079, at *11 (D. Utah Mar. 31, 2022) ("Courts routinely exclude expert testimony as to intent, motive, or state of mind as impermissible.").

Fourth, the Court agrees with Defendant's contention that Mr. Crosby's opinions as to whether Defendant complied with the Loveland Police Department's policy, procedures, and training are not relevant to the issue of whether a constitutional violation occurred.  (*See* ECF No. 110 at 15.)  The protections of the Fourth Amendment do not vary from place to place and from time to time as police enforcement practices do.  *Whren v. United States*, 517 U.S. 806, 815 (1996).  Similarly, the Court agrees with Plaintiffs' contention that the Department's internal review following the shooting is not relevant to the claims remaining in this case.

Fifth, the Court will not preclude Mr. Crosby from testifying about tasers.  Defendant cites no authority to support the bizarre suggestion that an experienced police officer must have used a taser on an animal as a prerequisite to testifying about the possibility of using a taser under the circumstances here.  In any event, the Court finds that arguments and evidence

10

pertaining to Mr. Crosby's degree of familiarity with tasers go to the credibility of any testimony he might offer on the topic, not its admissibility.

Subject to these limitations, Mr. Crosby may offer his opinions on whether Herkimer posed a danger to Defendant and whether Defendant's actions were consistent with those of a reasonable officer, including his shooting of Herkimer a second time and his refusal to allow Plaintiffs to get Herkimer to a veterinarian.  Mr. Crosby may also help the jury understand best practices for canine interactions.  "Ultimately, the rejection of expert testimony is the exception rather than the rule."  *O'Sullivan v. GEICO Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quotation omitted).  To the extent such testimony may be cumulative or objectionable for reasons not addressed in this Order, the Court will consider appropriate objections at trial.

## IV. CONCLUSION

Accordingly, both Motions (ECF Nos. 101, 110) are GRANTED IN PART, as set forth in this Order, but otherwise DENIED.

DATED this 15th day of November, 2023.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge